

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-3-1998

# United States v. Leggett

Precedential or Non-Precedential:

Docket 96-7772

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"United States v. Leggett" (1998). *1998 Decisions.* Paper 274.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/274

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 3, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7772

UNITED STATES OF AMERICA

v.

MICHAEL K. LEGGETT,

        Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Criminal Action No. 94-cr-00097

Argued May 18, 1998

Before: ROTH and MCKEE, Circuit Judges
O'NEILL,[1] District Judge

(Opinion filed December 3, 1998)

David M. Barasch
United States Attorney
Middle District of Pennsylvania

_____

1. Honorable Thomas N. O'Neill Jr., United States District Court Judge
for the Eastern District of Pennsylvania, sitting by designation.

Frederick E. Martin (Argued)
Assistant United States Attorney
Herman T. Schneebeli Federal
 Building, Suite 308
240 West Third Street
P.O. Box 548
Williamsport, PA 17703-0548

 Attorneys for Appellee

Mark R. Lippman, Esquire (Argued)
8070 La Jolla Shores Drive, #437
La Jolla, CA 92037

 Attorney for Appellant

OPINION OF THE COURT

ROTH, Circuit Judge:

Michael K. Leggett appeals from a judgment of conviction and sentence entered in the United States District Court for the Middle District of Pennsylvania. He was convicted of assaulting a prison official in violation of 18 U.S.C. S 111. Leggett makes three claims on appeal: (1) the district court erred in not ordering sua sponte a competency hearing before the commencement of the trial, (2) the district court failed to ensure that Leggett validly waived his right to testify, and (3) the district court improperly concluded that Leggett forfeited his right to counsel at sentencing when he physically attacked his attorney. We find each of Leggett's claims to be without merit and will therefore affirm the judgment of the district court.

I.

In February 1994, Leggett, who was serving a prison term for bank robbery and assault at a federal penitentiary in Indiana, was transferred to the Allenwood Federal Correctional Complex in White Deer, Pennsylvania. Upon his arrival at Allenwood, Leggett resided in a single cell. On April 19 of that year, Dr. Stephen Karten, Allenwood's chief psychologist, recommended that Leggett remain in a single

2

cell due to his inability to live peacefully with another inmate. However, due to an influx of new inmates, some single-cell inmates had to be relocated to double cells. On April 21, Leggett's name was taken off the list of inmates eligible for single cells, and Leggett was required to move his belongings to another cell in anticipation of being assigned a cellmate.

Donn Troutman served as Leggett's unit manager at this time and was responsible for Leggett's housing assignment. When Leggett discovered that he was losing his single-cell status, he went to Troutman's office to complain. Leggett told Troutman that he had been waiting all day to speak to him and, after Troutman stepped outside his office, Leggett punched him in the face. Leggett attempted additional blows which were deflected by Troutman. Leggett then grabbed Troutman's necktie and tried to strangle him with it. Eventually, Troutman, who was five inches taller and fifty pounds heavier than Leggett, was able to subdue him with the assistance of several prison guards. Troutman suffered multiple cuts to his face as a result of the attack.

An assistant federal public defender, D. Toni Byrd, was assigned to represent Leggett at his trial for the assault on Troutman. However, due to disputes between Leggett and Byrd concerning jury selection and delay of the trial, Leggett sought to discharge Byrd and requested the appointment of new counsel. On July 26, 1995, the district court held a hearing at which Leggett and Byrd explained the bases for their disagreements. After the hearing, the district court denied Leggett's motion to dismiss his counsel. Nevertheless, several days later, Byrd sought leave to withdraw from the case, due mainly to threats of physical harm.[2] The district court allowed Byrd to withdraw and, in her place, assigned G. Scott Gardner to represent Leggett.

_____

2. Byrd, who was several months' pregnant, referred to statements by Leggett that beating up a pregnant woman would make him "look bad" and that he hit a federal public defender who had been assigned to represent him in an unrelated matter in Ohio. Supplemental Appendix at 10.

3

Gardner represented Leggett throughout the trial, which began on November 3, 1995, and continued on November 7, 8 and 9. At one point during the trial (on November 8), Gardner expressed concern to the district court that Leggett, against the advice of counsel, wished to testify. The district court expressly encouraged Leggett to heed Gardner's advice. On the following day, at the close of evidence, Leggett had not yet testified and the district court asked Gardner at sidebar whether the defense had any further evidence to present. Gardner indicated that the defense had nothing further. On November 13, the jury returned a verdict of guilty.

In the ensuing months, Leggett, both with the assistance of Gardner and pro se, moved to set aside the verdict and issued objections to the presentence report. The district court denied the motions, overruled the objections, and set sentencing for March 25, 1996. On March 25, Leggett entered the courtroom in the company of two United States Marshals. Upon seeing Gardner in the courtroom, Leggett lunged at his attorney and punched him in the head, knocking him to the ground. While Gardner lay, supine, Leggett straddled him and began to choke, scratch and spit on him. The Marshals and a probation officer restrained Leggett and removed him from the courtroom. Gardner was taken to a hospital by emergency medical personnel and treated for cuts, scratches and bruises. The district court then allowed Gardner to withdraw as counsel and concluded that Leggett had forfeited his right to counsel for the sentencing hearing.

In April 1996, Leggett moved for a competency hearing. The district court granted this motion so that it could determine whether Leggett was competent to represent himself at sentencing. The district court appointed yet another attorney, Thomas Thornton, to represent Leggett solely at the competency hearing. In October 1996, the district court conducted the competency hearing, at which it heard testimony from various mental-health professionals concerning Leggett's behavior. At the conclusion of the hearing, the district court reaffirmed its decision that Leggett had forfeited his right to counsel and concluded that he was competent to represent himself at sentencing.

In November 1996, Leggett appeared for sentencing without counsel. The district court imposed a sentence of 36 months' imprisonment to be served consecutively to the other terms Leggett had previously received. This appeal followed.

II.

On appeal, Leggett makes the following three claims: (1) the district court erred in declining sua sponte to order a competency hearing before the start of the trial, (2) the district court improperly failed to make certain that Leggett validly waived his right to testify during the trial, and (3) the district court erroneously concluded that Leggett forfeited his right to counsel at sentencing. The district court had jurisdiction pursuant to 18 U.S.C. S 3231. We have jurisdiction pursuant to 28 U.S.C. S 1291.

A. The Pre-Trial Competency Hearing

We will first consider Leggett's claim that the district court erred in declining to conduct a competency hearing before the trial began. Since we must decide whether the district court properly applied the standard for determining the necessity of a competency hearing, our review is plenary. United States v. Renfroe, 825 F.2d 763, 766 (3d Cir. 1987). We note that, if the proper legal standard has been applied, factual findings regarding competency are reviewed for clear error. United States v. Velasquez, 885 F.2d 1076, 1089 (3d Cir. 1989); Renfroe, 825 F.2d at 766 n.4.

Fundamental to an adversarial system of justice is the precept that "a person whose mental condition is such that [the person] lacks the capacity to understand the nature and the object of the proceedings[,] . . . to consult with counsel, and to assist in preparing [a] defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975). The conviction of a legally incompetent defendant violates due process. Pate v. Robinson, 383 U.S. 375, 378 (1966). In keeping with this unwillingness to try incompetents, we have a statutory directive providing that a criminal defendant whose competency is in question may

5

be subjected to a competency hearing. 18 U.S.C. S 4241(a).3
If neither the defendant nor the government moves for such
a hearing, the trial court may do so on its own motion. Id.
To do so, however, the trial court must have "reasonable
cause" to believe that the defendant is "presently" suffering
from an impairment resulting in mental incompetency. Id.;
see also Renfroe, 825 F.2d at 766-77 (holding that court
must have "reasonable doubt" as to defendant's ability to
grasp proceedings to order a competency hearing); United
States v. Davis, 93 F.3d 1286, 1290 (6th Cir. 1996) (noting
that district court must have " `reasonable cause to believe'
the defendant [is] incompetent") (quoting 18 U.S.C.
S 4241(a)); United States v. George, 85 F.3d 1433, 1437 (9th
Cir. 1996) (stating that a finding of "reasonable cause"
dictates whether a court conducts a competency hearing);
United States v. Lebron, 76 F.3d 29, 32 (1st Cir.) (same),
cert. denied, 518 U.S. 1011 (1996); United States v. Nichols,
56 F.3d 403, 414 (2d Cir. 1995) (same); United States v.
Morgano, 39 F.3d 1358, 1375 (7th Cir. 1994) (affirming
district court's denial of motion for competency hearing
based on absence of reasonable cause to doubt defendant's
competency); United States v. Williams, 998 F.2d 258, 266
(5th Cir. 1993) (affirming district court's denial of motion
for psychiatric examination due to absence of reasonable
cause to doubt defendant's competency).

A defendant is competent to stand trial if (1) the
defendant has the " `present ability to consult with [defense
counsel] with a reasonable degree of rational

_____

3. Section 4241 states in pertinent part:

> At any time after the commencement of a prosecution for an offense
> and prior to the sentencing of the defendant, the defendant or the
> attorney for the Government may file a motion for a hearing to
> determine the mental competency of the defendant. The court shall
> grant the motion or shall order such a hearing on its own motion,
> if there is reasonable cause to believe that the defendant may
> presently be suffering from a mental disease or defect rendering
him
> mentally incompetent to the extent that he is unable to understand
> the nature and consequences of the proceedings against him or to
> assist properly in his defense.

18 U.S.C. S 4241(a).

6

understanding' " and (2) the defendant has a " `rational as well as factual understanding of the proceedings.' " Drope, 420 U.S. at 172 (quoting Dusky v. United States , 362 U.S. 402, 402 (1960)); Renfroe, 825 F.2d at 766-77; Lebron, 76 F.3d at 31; Nichols, 56 F.3d at 410; United States v. Soldevila-Lopez, 17 F.3d 480, 489 (1st Cir. 1994). In determining whether a defendant satisfies this two-prong test, a court must consider a number of factors, including: "evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial." Drope, 420 U.S. at 180. However, due to the vicissitudes of all cases, a court must be cognizant that "[t]here are . . . nofixed or immutable signs which invariably indicate the need for [a competency hearing]." Id. There is no predetermined formula for making a finding of reasonable cause. A court must simply look at the unique circumstances of the case and decide whether the defendant (1) has the capacity to assist in her or his own defense and (2) comprehends the nature and possible consequences of a trial. If either prong is not met, a court has reasonable cause to order a competency hearing. We will now consider whether Leggett satisfied these criteria.

Leggett argues that his inability to assist in his own defense was evident from the July 26 pre-trial hearing at which he sought the dismissal of Byrd, his then-trial counsel. At that hearing, Byrd expressed her concern that Leggett's recalcitrance impeded her ability to mount a defense when she stated, "I do question whether he has an ability to assist his counsel, which is [a] prong of the competency evaluation." Nonetheless, Byrd emphasized that she was not formally moving for a competency evaluation. During the hearing, moreover, Leggett gave no indication that he would be incapable of assisting in his defense. Although he was at times obstreperous, he did demonstrate an ability to serve his own interests before the court. Over the course of the hearing, Leggett -- without the assistance of counsel -- cross-examined two witnesses, one of whom was Byrd. Furthermore, he made sure he preserved on the record any court ruling he perceived to be in error. For example, when the district court refused to appoint counsel for the pre-trial hearing, Leggett responded, "I want to cite

that as error. I object to that." Leggett even feigned ignorance of basic courtroom procedure in a thinly veiled effort to support his contention that the district court erred in not appointing counsel. When the district court asked Leggett whether he understood that he could not interrupt a witness who was trying to answer a question, Leggett declared, "No, I don't understand that because I'm not a lawyer. . . . And you told me I couldn't have no lawyer so I'm doing the best I can." Based on Leggett's handling of the hearing, the district court concluded, "[I]t seems to me from what he said today, he's on top of this case extremely. And I don't know how a client could be more assistive, if there's such a word . . .. "

We agree with the district court's conclusion that Leggett seemed more than capable of assisting in his own defense. His exchanges with the district court manifested a working knowledge not only of trial tactics but also of the importance of underscoring potential errors on the record as grounds for appeal. In similar cases, other courts of appeals have interpreted a defendant's ability to participate in court proceedings as a sign of competency. In United States v. Sovie, 122 F.3d 122, 128 (2d Cir. 1997), a defendant argued that a district court erred in denying a motion for a competency examination because the defendant allegedly suffered from a " `split personality.' " The court of appeals for the Second Circuit rejected this argument, noting that the defendant "took notes, conversed with counsel, and reacted reasonably to the admission of evidence." Id. These actions supported the Sovie court's conclusion that the defendant was "a knowing participant in his defense." 122 F.3d at 128.

In Williams, the court of appeals for the Fifth Circuit confronted the same issue when a defendant appealed from a district court's denial of a motion for a mental examination to determine competency. 998 F.2d 264-67. Although the trial record showed that the defendant tended to become " `extremely agitated' " and incoherent, the Williams court affirmed the district court's decision. Id. at 265-66. Despite the defendant's unruly behavior at trial, the court of appeals concluded that he was "rational and able to assist his attorney," id. at 266, based on the

following: (1) the defendant had "advised [counsel] to file certain motions, including the motion for a mental examination"; (2) a short period before moving for a mental examination, the defendant "had been handling pro se a custody case involving his son"; and (3) in connection with the custody case, the defendant had "filed numerous coherent briefs [in a] state court, challenging its jurisdiction over him." Id. at 265.

Leggett appeared to be just as able to contribute to his defense as the defendants in Sovie and Williams. His untoward antics aside, he made a clear effort at the hearing to present arguments and evidence favorable to his position. There was no reason to believe that he would not act with the same purpose of mind once the trial itself began and he had the services of counsel at his disposal. In fact, Leggett's desire to have Byrd discharged was at least partially grounded in what he considered poor strategic decisions on her part and her failure to get him copies of various evidentiary documents.[4] It would have indeed been oxymoronic if the district court had ruled sua sponte that the defendant could not aid in his defense because he had too keen an interest in that defense. Leggett's reasons for seeking Byrd's discharge stemmed from his relationship with that particular lawyer and did not seem indicative of a general incapacity to consult with any lawyer. Accordingly, the district court allowed Byrd to withdraw and appointed Gardner in her place. The district court advisedly refrained from reading a competency issue into the mere incompatibility of a defendant and one particular lawyer. The clarity and zeal with which Leggett pursued Byrd's discharge gave the district court no reasonable cause to believe that he was unable to assist counsel in his defense. See George, 85 F.3d at 1438 (affirming district court's denial of defendant's motion for psychological evaluation since defendant was " `lucid,' " " `articulate' " and " `intelligen[t]' "); Morgano, 39 F.3d at 1374 (affirming district court's denial of defendant's motion for competency

_____

4. Leggett mainly disagreed with Byrd on matters relating to jury selection and adjustment of the trial's start date. He also maintained that she had not obtained copies of various memoranda such as reports from Dr. Karten, the prison's chief psychologist.

hearing in case where, in defense counsel's judgment, defendant "had been helpful and more cooperative than the average criminal defendant in assisting in preparation for trial").

We will next consider whether the district court had reasonable cause, at the July 26 pretrial hearing, to believe that Leggett did not have a rational and factual understanding of the hearing and of the pending trial.5 Leggett points to portions of the hearing's transcript in which he rants about his mental impairments as evidence that he could not grasp the nature and consequences of the proceedings. At several points, Leggett mentioned that he has "brain damage" and suffers from "schizophrenia."6 Without even discussing the self-serving nature of these comments, what precious little probative value they had was undercut by Leggett's own admission that his impairments did not affect his comprehension of legal concepts, such as waiver:

> [A]nyway, I knew exactly, you know, what it-- what it is to waive a right. You know, this is not my first time in court. You know, I'm not stupid. I'm [sic] may suffer from a little brain damage, a little schizophrenia, but I ain't never been stupid. I understand what waiving

_____

5. We note, initially, that Byrd stated that she did not question Leggett's competency with regard to "understanding the nature of the charges, what goes on in court [or] the function of the prosecution, the function of defense and the function of the Court." While her statements alone are not dispositive of the issue, they strongly bolster the conclusion that Leggett fully understood his situation. See United States v. Morgano, 39 F.3d 1358, 1374 (7th Cir. 1994) (defense counsel's averment that defendant had ability to understand and participate in proceedings "casts grave doubt on the defendant's incompetency").

6. Both Leggett and the government make reference to the testimony of several mental-health experts concerning Leggett's mental condition at the time of his attack on Troutman at the prison. Such evidence, however, is irrelevant for our purposes because it sheds little light on Leggett's mental condition at the time of the pretrial hearing on July 26, 1995 -- over one year after the assault on Troutman. See United States v. Davis, 93 F.3d 1286, 1290 (6th Cir. 1996) (defendant's assertion of mental incapacity at time of offense does not "permit or require" examination of competency for trial).

10

        your rights is. You know, I understand what a knowing
        and intelligent and knowing and voluntary waiver is.

Thus, Leggett's argument is betrayed by his own
articulation of an axiom generally observed by courts: i.e.,
" `[i]t does not follow that because a person is mentally ill
[that person] is not competent to stand trial.' " Davis, 93
F.3d at 1290 (quoting Newfield v. United States, 565 F.2d
203, 206 (2d Cir. 1977)); see also Nichols, 56 F.3d at 412
("It is well-established that some degree of mental illness
cannot be equated with incompetence to stand trial.")
(internal quotation marks and citation omitted); Williams,
998 F.2d at 266 (observing that certain mental disabilities,
such as "minor neurosis or slight retardation," may not
render a defendant incompetent to stand trial). If the
mental illness does not "deprive the defendant of the ability
. . . to understand the proceedings . . . rationally as well as
factually," Nichols, 56 F.3d at 412 (citation omitted), then
the illness is irrelevant for the purposes of determining
competency.

Although a trial court may consider a defendant's history
of mental illness, it must "properly focus[ ] its inquiry [on
the defendant's] mental state at the time of the
[proceedings]." Morgano, 39 F.2d at 1374 (citation omitted).
That is, the defendant must not only suffer from a mental
impairment but must also be "presently" unable to
understand the nature and consequences of the
proceedings. 18 U.S.C. S 4241(a). Nothing that Leggett said
or did during the July 26 hearing suggested that he lacked
the requisite understanding. A self-proclamation of mental
illness hardly qualifies as proof of incompetency, especially
when coupled with a textbook recitation of the necessary
elements of a legal waiver. Courts have considered behavior
far more extreme than Leggett's rants to be insufficient to
warrant a sua sponte competency hearing under section
4241.

The facts in Lebron strongly mirror those of the present
case. In Lebron, the defendant, like Leggett, had a lengthy
history of psychiatric disorders, and was diagnosed as a
possible schizophrenic. 76 F.3d at 30. At a change-of-plea
hearing, the defendant threw a pitcher of water at several
case investigators. Id. at 31. Neither side moved for a

11

competency hearing and, pursuant to a plea agreement, the defendant was sentenced. Id. On appeal, the defendant argued that the district court should have ordered a competency hearing sua sponte due to his "irrational and outrageous behavior in the courtroom." Id. at 32. In affirming the district court's judgment of sentence and rejecting the defendant's argument, the court of appeals for the First Circuit expounded, "Such behavior may be uncontrolled, manipulative, or even theatrical. It is not determinative of competency. Agitated or violent courtroom antics alone do not mandate a finding by the trial court of reasonable cause." Id. (citing United States v. Marshall, 458 F.2d 446, 450 (2d Cir. 1972)); see also Nichols, 56 F.3d at 413 (affirming district court's finding that defendant's unusual behavior -- i.e., getting down "on all fours" and putting his head to the floor -- was " `all calculated fakery' ").

Clearly, Leggett's declarations of mental illness were no more generative of reasonable cause than was the defendant's sudden paroxysm in Lebron. Just as we do not want to encourage defendants to fabricate symptoms of mental disorders (e.g., violent acts in court) to raise doubts about their competency, we also do not want to require " `district courts to order competency hearings sua sponte in every case where a defendant has some history of psychiatric treatment and, even vaguely, mentions the problem.' " Lebron, 76 F.3d at 33 (quoting Hernandez–Hernandez v. United States, 904 F.2d 758, 760 (1st Cir. 1990)). Leggett merely mentioned that he had been diagnosed in the past as having psychiatric problems. Such statements, standing alone, did not give the district court reason to believe that Leggett did not grasp the nature and consequences of the proceedings against him.

Based on this reasoning, we conclude that the district court did not have reasonable cause to believe that Leggett (1) was incapable of consulting with an attorney and assisting in his defense or (2) did not understand the nature and consequences of the proceedings against him.7
_____

7. We note that, although the district court held a competency hearing after the trial and determined that Leggett was competent to appear for

12

B. Right To Testify

We now turn to the issue of whether Leggett was denied
his right to testify at the trial. We exercise plenary review
over claims of constitutional violations, such as the denial
of the right to testify. United States v. Pennycooke, 65 F.3d
9, 10 (3d Cir. 1995).

The Supreme Court has held that the right to "testify on
one's own behalf at a criminal trial" is grounded in three
provisions of the Constitution.8 Rock v. Arkansas, 483 U.S.
44, 51 (1987); see also United States v. Van De Walker, 141
F.3d 1451, 1452 n.1 (11th Cir. 1998) (acknowledging that
right to testify is constitutional), cert. denied, No. 98-5615,
1998 WL 480721 (U.S. Oct. 5, 1998); Brown v. Artuz, 124
F.3d 73, 76 (2d Cir. 1997) (same), cert. denied, 118 S. Ct.
1077 (1998); Ortega v. O'Leary, 843 F.2d 258, 261 (7th Cir.
1988) (same). First, the "Fourteenth Amendment's
guarantee that no one shall be deprived of liberty without
due process of law include[s] a right to be heard and to
offer testimony." Rock, 483 U.S. at 51; see also United

_____

sentencing, that determination is in no way relevant to our analysis of
the district court's decision not to order a competency hearing prior to
the trial. The Supreme Court has noted that a defendant's competency
at one point of a proceeding does not necessarily mean that the
defendant has been competent throughout the proceeding. See Drope v.
Missouri, 420 U.S. 162, 181 (1975) ("Even when a defendant is
competent at the commencement of his trial, a trial court must always
be alert to circumstances suggesting a change that would render the
accused unable to meet the standards of competence to stand trial.").
For this reason, the district court's posttrial competency determination
carries no weight with regard to our review of its decision not to order
an earlier competency hearing.

8. The right to testify is also protected by federal statute. Under
federal
law,

        [i]n trial of all persons charged with the commission of offenses
        against the United States and in all proceedings in courts martial
        and courts of inquiry in any State, District, Possession or
Territory,
        the person charged shall, at his own request, be a competent
        witness. His failure to make such request shall not create any
        presumption against him.

18 U.S.C. S 3481.

13

States ex rel. Wilcox v. Johnson, 555 F.2d 115, 118 (3d Cir. 1977) (right to testify "emanate[s] from the due process requirements of the Fourteenth Amendment") (citation omitted). Second, the right to testify also derives from the Compulsory Process Clause of the Sixth Amendment, "which grants a defendant the right to call `witnesses in his favor.' " Rock, 483 U.S. at 52 (quoting Washington v. Texas, 388 U.S. 14, 17-19 (1967)). At times, "the most important witness for the defense . . . is the defendant himself." Id. Finally, the right to testify is protected by the Fifth Amendment's guarantee against compelled testimony. Id. That is, the privilege to refuse to testify is part and parcel of the privilege to testify if one wishes to do so. Id. at 53.

The right is personal and can be waived only by the defendant, not defense counsel. Pennycooke, 65 F.3d at 10; Johnson, 555 F.2d at 118 (observing that right to testify "can be waived only by the defendant and not by his attorney") (internal quotation marks and citation omitted); Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997) ("This right [to testify] can be waived only by the defendant, not by his counsel."), petition for cert. filed, (U.S. Jul. 13, 1998) (No. 98-5802); Brown, 124 F.3d at 77 ("[E]very circuit that has considered this question has placed the defendant's right to testify in the `personal rights' category -- i.e., waivable only by the defendant himself regardless of tactical considerations.") (citations omitted); Ortega, 843 F.2d at 261 ("If a defendant insists on testifying, no matter how unwise such a decision, the attorney must comply with the request.") (citation omitted). If a defendant does waive this right, the waiver must be knowing, voluntary and intelligent. Pennycooke, 65 F.3d at 11; Emery, 139 F.3d at 198; Ortega, 843 F.2d at 261.

Leggett argues that the district court took no steps to inquire whether he knowingly, voluntarily and intelligently waived his right to testify. This argument fails to negotiate a rather fundamental hurdle: i.e., the fact that the district court had no duty to make such an inquiry. In Pennycooke, we unambiguously stated that "a trial court has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived the right voluntarily." 65 F.3d at 11. This ruling

14

falls in complete agreement with those of the majority of courts of appeals that have ruled on this issue. See, e.g., Van De Walker, 141 F.3d at 1452; Brown, 124 F.3d at 79; Liegakos v. Cooke, 106 F.3d 1381, 1386 (7th Cir. 1997); United States v. Ortiz, 82 F.3d 1066, 1071 (D.C. Cir. 1996); United States v. McMeans, 927 F.2d 162, 163 (4th Cir. 1991) (per curiam); United States v. Edwards, 897 F.2d 445, 446-47 (9th Cir. 1990); Siciliano v. Vose, 834 F.2d 29, 30 (1st Cir. 1987); United States v. Bernloehr, 833 F.2d 749, 752 (8th Cir. 1987); United States v. Janoe, 720 F.2d 1156, 1161 (10th Cir. 1983).9

We decided in Pennycooke that a trial court not only has no duty to make an inquiry but, as a general rule, should not inquire as to the defendant's waiver of the right to testify. We explained our reasoning as follows:

_____

9. Leggett relies heavily on Ortega v. O'Leary, 843 F.2d 258, 263 (7th Cir. 1988), in which the court of appeals for the Seventh Circuit stated that "a trial court should carefully ascertain through a methodical inquiry whether th[e] right [to testify] has been voluntarily and intelligently [waived]." His reliance on this case is misplaced for three reasons. First, as noted supra, the overwhelming majority of courts of appeals have decided that a trial court has no duty to make such an inquiry. Second, the facts of Ortega place it within a narrow exception to the general rule against a judicial-inquiry requirement since, in that case, the defendant told the trial court that his attorney was contravening his desire to testify and the trial court did not investigate the matter. 843 F.2d at 260. See United States v. Pennycooke, 65 F.3d 9, 12 (3d Cir. 1995) (offering Ortega as example of an "exceptional" case in which trial court should ensure that defendant's right to testify is protected). The facts of this case do not place it within the same narrow exception because Leggett makes no claim that his attorney actively barred him from testifying (we discuss this matter at length infra). Third, the court of appeals for the Seventh Circuit, in both Ortega and subsequent opinions, has embraced the belief that trial courts generally have no duty to inquire about the defendant's decision to testify-- and has thereby acknowledged that Ortega presents a narrow exception, not the rule. See, e.g., Liegakos v. Cooke, 106 F.3d 1381, 1386 (7th Cir. 1997) (holding that trial court need not ascertain whether defendant has validly waived right to testify); United States v. Brimberry, 961 F.2d 1286, 1289-90 (7th Cir. 1992) (same); Ortega, 843 F.2d at 261 ("It is true that courts have no affirmative duty to determine whether a defendant's silence is the result of a knowing and voluntary decision not to testify.") (citation omitted).

15

> [T]he determination of whether the defendant will testify is an important part of trial strategy best left to the defendant and counsel without the intrusion of the trial court, as that intrusion may have the unintended effect of swaying the defendant one way or the other. For example, as a matter of strategy and common sense, the defendant and counsel may wait until well into the trial before deciding whether the defendant will testify. Thus, the trial court may not know that the defendant will not testify until the defense rests. A colloquy on the right to testify at that point not only would be awkward, but more importantly[,] inadvertently might cause the defendant to think that the court believes the defense has been insufficient. This belief in turn might prompt the defendant to abandon an appropriate defense strategy without good reason.

Pennycooke, 65 F.3d at 11 (citations omitted). See also Van De Walker, 141 F.3d at 1452 (inquiries by trial court "would unnecessarily intrude into the attorney-client relationship and could unintentionally influence the defendant in his or her choice") (internal quotation marks and citation omitted); Liegakos, 106 F.3d at 1386 ("[W]hether to testify is a fundamental element of a strategy that the defendant may want (indeed, may be entitled) to keep in confidence. . . . Defendant and his lawyer should explore these issues and options carefully, but as a rule the judge need not and should not, inquire into the choice of defense strategy."). This rationale is rooted in the accepted principle that it is defense counsel's responsibility, not the trial court's, to make sure that the defendant is informed of the right to testify and that any waiver of the right is valid. Pennycooke, 65 F.3d at 13. See also United States v. Teague, 953 F.2d 1525, 1534 (11th Cir. 1992) (en banc) ("[I]t is primarily the responsibility of defense counsel to advise the defendant of his right to testify and thereby ensure that the right is protected.").

The hypothetical situation we presented in Pennycooke mirrors the chain of events at Leggett's trial. Leggett and his attorney, Gardner, were apparently debating whether Leggett should testify. However, the district court had no

16

way of knowing what they had decided between themselves by the time the defense rested its case. The district court wisely refrained from holding a colloquy with Leggett on the issue, and avoided giving the impression that it thought Leggett should testify. Still, Leggett raises two points in maintaining that the district court erred in not having such a colloquy. Neither point has merit.

First, Leggett observes that Pennycooke recognizes that, under certain circumstances, a trial court should inquire as to the defendant's decision to testify. While we did observe this exception to the general rule, we also took great pains to emphasize that it applies on the rarest of occasions. We noted that only "in exceptional, narrowly defined circumstances" is such judicial intervention appropriate. Pennycooke, 65 F.3d at 12. To elucidate the point, we provided the example of a situation in which "defense counsel nullifies a defendant's right to testify over the defendant's protest." Id. at 13. Prior to Pennycooke, we encountered such a case. In Johnson, the defendant's lawyer badgered the defendant into waiving his right to testify by threatening to withdraw from the case, which would have left the defendant to fend for himself for the remainder of the trial. 555 F.2d at 117. We determined that the "threatened loss of counsel" violated the defendant's constitutional rights and "worked as a lever to pry from [the defendant] his . . . right to testify." Id. at 120–21.

There is no indication that Leggett's situation was even remotely as dire as that of the defendant in Johnson. Leggett merely asserts that, during the course of the trial, he was in disagreement with his attorney as to whether he should testify. Unfortunately for Leggett, there is no constitutional right to be represented by a lawyer who agrees with the defendant's trial strategy. United States v. Taylor, 128 F.3d 1105, 1108 (7th Cir. 1997). Mere disagreement between defendant and counsel with regard to strategic decisions does not create a situation severe enough to compel a district court to investigate whether the defendant's rights are being impinged. As long as it is clear that defense counsel has informed the defendant of the right to testify and the defendant understands that right, a district court has no reason to intervene.[10] See id. (no

_____

10. Leggett makes no claim that he was either unaware of or did not understand his right to testify.

17

violation where lawyer disagrees with defendant's decision to testify but does not impede defendant's exercise of right to testify); Emery, 139 F.3d at 199 (holding that defendant's right to testify not violated where defendant understood right and attorney did not coerce waiver of the right); Noland v. French, 134 F.3d 208, 218 (4th Cir. 1998) (trial counsel did not act improperly in failing to put defendant on stand when defendant expressed no desire to testify), cert. denied, No. 97-9428, 1998 WL 313265 (U.S. Oct. 5, 1998); Payne v. United States, 78 F.3d 343, 346 (8th Cir. 1996) (defendant cannot claim defense attorney acted improperly in not advising defendant to testify when attorney advised defendant of right to testify and, in fact, defendant knew of right beforehand). Thus, mindful that judicial inquiry concerning the right to testify "is the exception, not the rule," we conclude that Leggett has not presented any evidence that his attorney acted to "frustrat[e] his . . . desire to testify." Pennycooke, 65 F.3d at 13. As such, Leggett has shown no reason why we should apply the narrow Pennycooke exception to this case.

The second point raised by Leggett in support of his "right to testify" claim is that the district court openly expressed its opinion that he should not testify. The district court made two statements in this regard. On November 8, 1995, the day before both sides concluded their presentations of evidence, Gardner expressed concern that, contrary to Gardner's advice, Leggett wished to testify. The district court told Leggett:

> [Y]ou ought to listen to your lawyer's advi[c]e. He's got a better perspective on this than you do. And as I told you before, if my son were on trial here, I would tell him to follow his lawyer's advice. If I were on trial, I would follow my lawyer's advice, even though I thought it was wrong. And I do think that you should give that the greatest consideration.

Then, on November 9, the district court engaged in this exchange at sidebar with Gardner:

> District Court: I didn't want to do this in open Court, but do you have -- I'm not sure of your being entitled to any further evidence, but I wondered whether you had any.

18

> Mr. Gardner: I haven't any.
>
> District Court: All right. That's fine. I didn't want to say it because I thought [Leggett] might jump up and say he wanted to testify.

Clearly, the district court's comments on both occasions were highly inappropriate. As we stressed in Pennycooke, it is inadvisable for a trial court to address "a defendant directly about his or her waiver of the right to testify." 65 F.3d at 11. Although we explicitly stated in Pennycooke that a trial court should avoid encouraging a defendant to testify, a trial court should also avoid discouraging such testimony. Any strategic dispute between Leggett and Gardner should have been resolved without comment from the district court.

The impropriety of the district court's remarks being noted, we nonetheless conclude that the district court did not commit reversible error. See United States v. Leo, 941 F.2d 181, 195 (3d Cir. 1991) (ruling that district court's restriction of defendant's right to testify could be considered harmless error beyond a reasonable doubt if defendant was not prevented from putting forth a complete defense).11 The bare facts of the matter are these: (1) the day before the defense rested its case, Leggett and his attorney disagreed about Leggett's taking the stand; (2) one day later, at the close of evidence, Leggett's attorney indicated that he had no further evidence to present -- which implicitly meant that Leggett would not testify; and (3) Leggett did not then and does not now maintain that his attorney acted against his wishes. Based on these facts, the district court received no indication that Leggett was coerced by his attorney to remain silent. The district court could only have assumed that, in the 24-hour period leading to the close of evidence, Gardner had convinced Leggett that testifying was not in his best interests. See Lambrix v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996) ("Without evidence that [the defendant] was subject to continued coercion, we cannot

_____

11. Although the government does not argue that the district court's actions constituted harmless error, we have discretion to apply harmless-error analysis to those actions. United States v. McLaughlin, 126 F.3d 130, 135 (3d Cir. 1997), cert. denied, 118 S. Ct. 2366 (1998).

19

assume that [the defendant's] apparent acquiescence to a trial strategy in which he did not testify was anything but voluntary."), aff'd, 520 U.S. 518 (1997).

Leggett makes much of the fact that the district court asked Gardner at sidebar whether the defense had any further evidence to present. Yet, the mere fact that the district court asked for any further evidence at sidebar still would not suggest that Leggett was denied the right to testify unless one of two possibilities were true: either (1) Leggett was not informed of his right to testify up to that point or (2) Gardner defied Leggett's instructions and offered no further evidence when Leggett had planned to testify before the close of evidence. The first scenario clearly does not apply since Leggett had asserted his right to testify earlier in the trial. One who asserts the right to testify cannot later claim ignorance of that right. See id. at 1508 (finding defendant's claim that he was uninformed of right to testify dubious since defendant asserted right at earlier trial based on same charges). The second scenario seems equally baseless. To reiterate an earlier point, Leggett has not argued in this appeal that Gardner misrepresented his position. Furthermore, Leggett made several postconviction pro se motions but not one was based on the denial of the right to testify. If he had been planning to testify, one would expect that the denial of that right would have been one of the first bases he would have claimed in trying to overturn his conviction.12 Therefore, although we find that the district court rashly injected itself into a discourse better left to the attorney and client, that imprudence did not result in a violation of Leggett's right to testify. Leggett was aware of his right to testify and his lawyer did nothing to prevent him from testifying. There is no evidence to the contrary.

To recapitulate, we hold that: (1) under the

_____

12. We note also that Leggett has made no claim of ineffective assistance of counsel -- a claim which would at least be colorable if Gardner had kept him from testifying against his will. See Strickland v. Washington, 466 U.S. 668, 687 (1984) (convicted defendant may claim lawyer was ineffective if lawyer did not function as "counsel" during trial and if lawyer's actions prejudiced the defense).

circumstances of this case, the district court had no duty to ascertain whether Leggett had validly waived his right to testify; (2) Leggett's disagreement with trial counsel over testifying did not create the exceptional circumstances necessary to warrant judicial inquiry; and (3) the district court's involvement in the dispute between Leggett and his attorney, while inappropriate, did not amount to reversible error because there is no evidence that Leggett had any intention of testifying on November 9 before the close of evidence. For these reasons, we reject Leggett's claim that the district court denied him the right to testify.

C. Forfeiture of the Right to Counsel

Finally, we turn to Leggett's claim that the district court improperly determined that he forfeited his right to counsel at sentencing by physically attacking his lawyer. We exercise plenary review over claims alleging denial of the Sixth Amendment right to counsel. United States v. Goldberg, 67 F.3d 1092, 1097 (3d Cir. 1995).

This case raises the issue of forfeiture of the right to counsel. Forfeiture, however, is often confused with the closely related -- but distinct -- concept of waiver. See, e.g., United States v. Mitchell, 777 F.2d 248, 258 (5th Cir. 1985) (concluding that defendant "waive[d]" right to counsel while resting decision on notion of forfeiture); Yale Kamisar et al., Modern Criminal Procedure, 1598 n.b (8th ed. 1994) (noting that some courts refer to "waiver" as "forfeiture"). In the interest of clarity, we shall initially note the distinction between the two concepts. A waiver is "an intentional and voluntary relinquishment of a known right." Goldberg, 67 F.3d at 1099 (citing, inter alia, Wayne R. LaFave & Jerold H. Israel, Criminal Procedure, S 11.3(c), at 546 n.4 (2d ed. 1992)); United States v. McCleod, 53 F.3d 322, 325 n.6 (11th Cir. 1995) ("We discuss `forfeiture' rather than `waiver' because waiver implies `an intentional relinquishment of a known right.' ") (citation omitted). Most commonly, one waives a constitutional right by an "affirmative, verbal request" (e.g., requests to proceed pro se or to plead guilty). Goldberg, 67 F.3d at 1099. It is well established that any waiver of the right to counsel must be knowing, voluntary and intelligent. United States v. Salemo, 61 F.3d 214, 218

21

(3d Cir. 1995); Government of the Virgin Islands v. James, 934 F.2d 468, 470 (3d Cir. 1991); McMahon v. Fulcomer, 821 F.2d 934, 944 (3d Cir. 1987). With regard to ensuring that a waiver is valid, the trial court's responsibility varies -- depending on the right being waived. As we discussed in depth earlier, a trial court has no duty to ascertain that a waiver of the right to testify is valid. By contrast, if a defendant elects to waive the right to counsel, a trial court must make sure that the defendant has "an awareness of the dangers and disadvantages inherent in defending oneself." United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1982); see also Faretta v. California, 422 U.S. 806, 835 (1975) (trial record must show that defendant who waives right to counsel " `knows what he is doing and [that] his choice is made with eyes open' ") (citation omitted).

Forfeiture, on the other hand, does not require the knowing and intentional relinquishment of a known right. Rather, forfeiture "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." Goldberg, 67 F.3d at 1100. To forfeit the right to legal representation, a defendant must engage in "extremely serious misconduct." Id. at 1102. For example, in McCleod, a defendant's attorney testified that the defendant was "verbally abusive"; had "threatened to harm[the attorney]"; had threatened to sue the attorney; and had tried to persuade the attorney to engage in unethical conduct. 53 F.3d at 325. The district court concluded that the defendant's behavior was so egregious as to constitute a forfeiture of the right to counsel -- and the court of appeals for the Eleventh Circuit agreed by affirming that decision. Id. at 326.

Leggett's conduct was even more extreme than that of the defendant in McCleod. Whereas the McCleod defendant's abuse of his attorney was verbal in nature, Leggett's abuse was an unprovoked physical battery. We do not hesitate to conclude that such an attack qualifies as the sort of "extremely serious misconduct" that amounts to the forfeiture of the right to counsel. Goldberg, 67 F.2d at 1102.

Leggett argues that the requirements of Goldberg were not satisfied by the district court when it concluded that

22

Leggett forfeited his right to a lawyer. We disagree. In Goldberg, a defendant's attorney alleged that the defendant had threatened his life. 67 F.3d at 1095. The district court concluded that the defendant forfeited his right to counsel by threatening the life of his attorney. Id. at 1096-97 (noting that district court used term "waiver" even though it was actually applying forfeiture principle). We reversed the district court's ruling but did not base our decision on the severity of the defendant's misconduct. (Certainly, it would be difficult to quantify a death threat as any more or less offensive to the sensibilities of civilized society than, say, an actual physical assault. Both acts are reprehensible.) Instead, we reversed the district court's ruling because its factual findings concerning the death threat were made at a hearing to which the defendant was not a party. Id. at 1102. We concluded that a forfeiture ruling could not be based entirely on evidence presented at an ex parte hearing. Id.

No such evidentiary problem exists in this case. An evidentiary hearing was not necessary because Leggett assaulted Gardner in full view of the district court. Furthermore, at the subsequent competency hearing (at which Leggett was represented by counsel), the district court did consider the possibility that Leggett was not in control of his faculties when he assailed Gardner-- though it did ultimately conclude that he was responsible for his actions.13 Thus, Leggett benefited from two elements which were not present in Goldberg: (1) a direct presentation of evidence before the district court (i.e., the occurrence of the attack itself) and (2) participation in an adversarial proceeding to contest the forfeiture. Since we based our decision in Goldberg on the absence of these factors and since those factors are present in this case, we reject Leggett's argument that the requirements of Goldberg were not satisfied by the district court.

_____

13. In denying Leggett's motion for the appointment of counsel after the attack and at the conclusion of the competency hearing, the district court remarked, "[N]o evidence presented at th[e competency] hearing supports Leggett's assertion that after engaging in an argument with his counsel, allowing 20 seconds to pass, and then assaulting his counsel, such actions were not voluntary."

In sum, we conclude that the district court did not err in determining that, by physically attacking his attorney, Leggett forfeited his right to counsel at the sentencing hearing.14

III.

For the foregoing reasons, we will affirm the district court's judgment of conviction and sentence.

_____

14. We note that the forfeiture of counsel at sentencing does not deal as serious a blow to a defendant as would the forfeiture of counsel at the trial itself. For a number of reasons (e.g., the inapplicability of the Federal Rules of Evidence), sentencing hearings " `demand much less specialized knowledge than trials.' " United States v. Salemo, 61 F.3d 214, 220 (3d Cir. 1995) (quoting United States v. Day, 998 F.2d 622, 626 (1st Cir. 1993)). We underscore that the district court in this case made its forfeiture ruling at the sentencing stage, not during the trial itself. We
express no opinion as to whether Leggett's misconduct would have been sufficient to justify the forfeiture of counsel during the trial.

24

McKEE, Circuit Judge, dissenting in part, and concurring in part.

I agree that the defendant waived his right to counsel at sentencing, and I concur dubitante in the majority's holding that the district court did not err in not ordering a competency examination.[1] However, I respectfully dissent from my colleagues' conclusion that the defendant "validly waived his right to testify." Maj. Op. at 2. Indeed, the majority misstates the issue. The issue is not whether the defendant "validly waived" his right to testify. He did not waive it at all. Instead, he was deprived of the opportunity to testify after he and his attorney informed the court that he wanted to do so. Accordingly, the majority's discussion of waiver is misplaced. Rather, the issue here is whether the district court violated a duty of inquiry under United States v. Pennycooke, 65 F.3d 9 (3d Cir. 1995). Because I believe that the district court's failure to inquire was a clear violation of the holding in Pennycooke, I must respectfully dissent.

I.

It is well settled that a criminal defendant has a constitutional right to testify in his or her own behalf. Rock v. Arkansas, 483 U.S. 44, 49–53 (1987). The decision belongs to the defendant and may not be made by trial counsel, or the court. See, e.g., Brown v. Artuz, 124 F.3d 73, 77 (2d Cir. 1997); Pennycooke, 65 F.3d at 10. Moreover, "[t]he wisdom or unwisdom of the defendant's choice does not diminish his right to make it." United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992) (quoting Wright v. Estelle, 572 F.2d 1071, 1079 (5th Cir. 1978) (Godbold, J., dissenting)). Further, "the right to testify on one's own behalf at a criminal trial . . . is one of the rights that `are essential to due process of law in a fair adversary process.' " Rock, 483 U.S. at 51 (citing Faretta v. California, 422 U.S. 806, 819, n.15 (1975)).

_____

1. I define my concurrence in that issue as "dubitante" to signify that I have reservations about that decision. See Salvation Army v. Dept. of Community Affairs, 919 F.2d 183, 202 n.1. (3d Cir. 1990).

25

Leggett wanted to exercise that right. He told the trial judge so. His attorney told the judge so, though he also informed the court that he advised against it. The majority agrees that defense counsel's opposition is irrelevant to our analysis. See Maj. Op. at 14 ("The right is personal and can be waived only by the defendant, not defense counsel") (citing Pennycooke, 65 F.3d at 10). The trial court obviously thought Leggett was competent to participate in his own defense when he told the court he wanted to testify, and today we uphold that conclusion. Yet, to put it mildly, the trial judge was not particularly impressed with Leggett's assertion of his right. The court first responded by urging Leggett to follow his lawyer's advice. The majority has already commented upon the colloquy in which the trial court urged Leggett to take his lawyer's advice, and mentioned the extent to which the judge attempted to get Leggett to follow that advice. See Maj. Op. at 18. My colleagues conclude that the court's comments then, and at a subsequent side bar "were highly inappropriate." Maj. Op. at 19. Indeed they were. They also constituted a breach of the trial court's obligation to allow Leggett to testify in his own behalf as is evidenced by the following exchange between defense counsel, the court, and the defendant:

> [DEFENSE COUNSEL]: I'm not resting at this point, but I intend to rest. Now, Mr. Leggett has indicated to me that he wants to testify. . . . I have advised him against testifying. . . . I don't think it's in his best interest . . . . He does not want to take that advice, apparently, and he's -- at least up until now. I don't know whether he's changed his mind to insist on testifying.
>
> [COURT]: Why don't you talk to him over the lunch hour. And if he wants to take the stand, what is your view as to whether -- I mean, aside from the right of it, do you think he has the right to take the stand?
>
> [DEFENSE COUNSEL]: I think he does, Your Honor.
>
> [COURT]: All right. Well, what are you asking us to do, if anything?
>
> [DEFENSE COUNSEL]: Well, your Honor, if he takes -- if he insists on taking the stand, I'm not sure what my

26

role is at that point other than asking him his name, because I don't -- I think it's self-defeating for this man to testify.

* * *

Now, as far as what -- what my obligation is -- I think that the Court ought to advise Mr. Leggett that, you know, your lawyer has told you that it's not in your best interests to testify. However, you do have a right. . . . [I]f he says, yes, I wish to take the witness stand, I don't have any questions prepared to ask him, other than what's your name and what do you have to say to the jury on your behalf.

* * *

[COURT] [addressing the prosecutor]: Well, what is wrong with Mr. Gardner asking his witness -- asking his client, if the client insists on taking -- I don't know whether Judge McClure is waiting out there or not. .. . We are late . . . . I throw this out for consideration. Mr. Gardner might properly ask him, well, what happened with respect to . . . whatever the gentleman's name was. What happened at that incident. Do you think there's something wrong with that?

[PROSECUTOR]: At a minimum I think that should be asked, Judge.

[COURT]: All right. Do you see anything wrong with that?

[DEFENSE COUNSEL]: . . . I don't know what Mr. Leggett's going to say. I'm at a loss. I never put a witness on the stand like Mr. Leggett before. And nothing that I've said or discussed with him over the past months has given me any indication of what he's going to say when he gets on the witness stand, other than ideation and these hallucinations and delusion.

[COURT]: Of course, that may be very helpful to you.

[DEFENSE COUNSEL]: Again, like I say, I don't know what the man's going to say.

[COURT]: I'm perfectly willing to tell Mr. Leggett what I told him before, that you ought to listen to your

27

lawyer's advise.[sic] . . . If I were on trial, I would follow my lawyer's advice, even though I thought it was wrong. And I do think that you should give that the greatest consideration.

What more do you think I ought to tell him, if anything?

[DEFENSE COUNSEL]: That his criminal record may come out if he takes the stand.

* * *

[COURT]: Well, he knows that. . . . What else?

[DEFENSE COUNSEL]: That he may -- well, in my opinion, he's going to -- it's going to be self-defeating and he's going to destroy any possibility of an acquittal in this case.

[COURT]: Well, I think there's question about that. He may be so far off base that it might win this case for him. So I don't know what more you want me to say.

[DEFENSE COUNSEL]: That's [sic] suffices, Your Honor.

* * *

[DEFENDANT]: I can't talk?

[COURT]: What did you want to say?

[DEFENDANT]: I wanted to say this here. This lawyer ain't been talking to me. If he would have been talking to me, he would know what I was going to say on the witness stand. That shows that this man is giving me ineffective assistance. He taking about he don't know what I'm going to say on the stand.

* * *

[COURT]: Just a minute. . . . The law clerks and I have discussed Mr. Gardner's performance in this case, and we think it is remarkably good, and -- so don't tell me that he's giving you ineffective assistance. He's going [sic] an excellent job.

* * *

28

        [DEFENDANT]: Well, what I'm --

        [COURT]: Just a second. I have got appointment [sic]
        with another judge. You know it. I am seven minutes
        late. I am going to keep it, and this Court's in recess.

App. at 148-151. The defendant responded "How did I
know? You didn't tell me you had no appointment." Supp.
App. at 125. A luncheon recess was then called. When
court resumed a witness was called out of order, and the
government proceeded with rebuttal. The court never
inquired further of Leggett. The next day, immediately prior
to the close of the case, the judge, prosecutor and defense
counsel had the following discussion:

        [PROSECUTOR]: The prosecution has no other rebuttal
        witness, Your Honor. We would move into evidence
        certain of the documents the Court has previously seen
        today, but we can do that out of the presence of the
        jury.

        [COURT]: Okay. All right. May I see counsel, please.

        (at sidebar)

        I didn't want to do this in open Court, but do you have
        -- I'm not sure of your being entitled to any further
        evidence, but I wondered whether you had any.

        [DEFENSE COUNSEL]: I haven't any.

        [COURT]: All right. That's fine. I didn't want to say it
        because I thought he might jump up and say he wanted
        to testify.

App. at 163 (emphasis added).

The majority holds that this scenario does not fall within
the "exceptional, narrowly defined circumstances" that
require "a direct colloquy with a defendant . . . to ensure
that the defendant's right to testify is protected."
Pennycooke, 65 F.3d at 12. If it doesn't, then I am hard
pressed to imagine a scenario that would.

II.

Pennycooke established that a trial judge usually has no
such duty of inquiry. Our reasoning there was based upon

29

the personal nature of the right to testify in one's own behalf, the dangers of the trial court intruding into matters of strategy, and the danger that unintended consequences could result thus interfering with the exercise of a fundamental constitutional right rather than protecting it. Id. at 11-12. Nevertheless, as noted above, we recognized that "exceptional, narrowly defined circumstances" could require "judicial interjection through a direct colloquy to ensure that the defendant's right to testify is protected." Id. at 12. The majority recognizes this, but hastens to add: "we also took great pains to emphasize that it applies on the rarest of occasions." Maj. Op. at 17. Indeed we did. However, that qualifier does not establish that this is not such an occasion.

My colleagues conclude that this is not such an occasion by characterizing the events that transpired during the trial as a "[m]ere disagreement between defendant and counsel with regard to strategic decisions." They conclude that the "disagreement" "does not create a situation severe enough to compel a district court to investigate whether the defendant's rights are being impinged." Maj. Op. at 17. However, "every circuit that has considered this question has placed the defendant's right to testify in the `personal rights' category -- i.e., waivable only by the defendant himself regardless of tactical considerations." Artuz, 124 F.3d at 77.

Furthermore, even assuming this was a "mere disagreement" over strategy, it was still a violation of the holding in Pennycooke to only ask defense counsel if his client wanted to testify, and make absolutely no inquiry of the defendant. See Ortega v. O'Leary, 843 F.2d 258, 261 n.2 (7th Cir. 1988) (stating that it is error to question only the attorney about a defendant's desire to testify where defendant interrupts a trial to express a desire to do so). Not only did the trial court address its inquiry only to counsel, it did so in a manner that prevented the defendant from responding, or objecting to his attorney's response. In fact, the defendant did not even know that the trial court had asked the question of his attorney. It is true that Leggett did not request to testify following the sidebar when his attorney informed the court that he had no additional

30

evidence to present. It is also irrelevant. How could he make such a request? Leggett could not very well have disrupted the proceedings by standing in open court and speaking directly to the judge without being asked anything. That was the choice that the judge's side bar left him. This jury was about to determine his fate. Surely, Leggett's failure to jump to his feet in front of the jury and insist that he be allowed to speak can not equate with a waiver of the right he had asserted just the preceding day. Ironically, Leggett may have done exactly that (jump to his feet and assert his right to testify as the judge feared) had he known what was going on. The judge realized that. He called defense counsel to sidebar to prevent it. Thus, the majority places far too much importance on Leggett's failure to speak out in front of the jury. That silence establishes nothing more than the success of the court's efforts to silence Leggett and prevent him from "jump[ing] up and say[ing] he wanted to testify".

The majority attempts to minimize the trial judge's attempt to keep Leggett from jumping up and asserting his right to testify as follows:

> The bare facts of the matter are these: (1) the day before the defense rested its case, Leggett and his attorney disagreed about Leggett's taking the stand; (2) one day later, at the close of evidence, Leggett's attorney indicated that he had no further evidence to present -- which implicitly meant that Leggett would not testify; and (3) Leggett did not then and does not now maintain that his attorney acted against his wishes. Based on these facts, the district court received no indication that Leggett was coerced by his attorney to remain silent. The district court could only have assumed that, in the 24-hour period leading to the close of evidence, Gardner had convinced Leggett that testifying was not in his best interests.

Maj. Op. at 19-20 ((citing Lambrix v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996) ("Without evidence that [the defendant] was subject to continued coercion, we cannot assume that [the defendant's] apparent acquiescence to a trial strategy in which he did not testify was anything but voluntary."), aff'd, 520 U.S. 518 (1997)). Although this

31

explanation is based on the record, the majority's conclusion as to what the district court assumed is rank speculation, not "bare facts." Moreover, that conjecture is contradicted by the trial judge's own statements at side bar. If the judge "could only have assumed that . . . Gardner had convinced Leggett that testifying was not in his best interest" I am at a loss to understand the judge's own explanation that he was speaking to Gardner at sidebar so that Leggett would not "jump up and say he wanted to testify."

Nothing that had transpired during the trial would have caused the trial judge to conclude that Leggett and his attorney had finally found a way to communicate on the eve of the close of the trial. Rather, all that had gone before, including the statements of Leggett, and his attorney, suggested Leggett continued to insist on taking the stand against advice of counsel even though the judge had attempted to cajole him into following his attorney's advice. Moreover, even if the judge had somehow reached the conclusion that during the preceding 24 hours, defense counsel and Leggett experienced an epiphany that had brought about a renaissance of communication between them, the trial court still had a duty of inquiry under Pennycooke to ascertain whether Leggett (and not his counsel) had made that decision, or whether counsel was failing to call Leggett against Leggett's wishes based upon a dispute over strategy.[2] Defense counsel candidly conceded that he was "at a loss" and that he "had never put a witness on the stand like Mr. Leggett before." Moreover, the majority's willingness to find a waiver from defendant's failure to respond following the sidebar would be troubling even if waiver were the issue here. "A reviewing court must `indulge every presumption against waiver of fundamental

_____

2. Defense counsel's familiarity with the personal nature of the right to testify was such that the trial court should have been even more concerned about who was making the decision. When initially asked if he thought his client had the right to testify, defense counsel responded: "Well, Your Honor, as I said, I've talked to lawyers that I respect and do a lot of criminal law about this issue, last week and also yesterday. And they both said that they believe that Mr. Leggett has the right to -- constitutional right to testify." App. at 148A.

32

constitutional rights.' " Ortega v. Leary, 843 F. 2d 258, 261 (7th Cir. 1988) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

The majority cites Lambrix v. Singletary to support its supposition that the trial judge "could only" have assumed that Leggett and his attorney had resolved their differences the night before. There, the defendant was tried before a jury on charges of murder. The jury deadlocked. Lambrix was retried and received the death penalty following conviction. On appeal he raised several issues including whether he was entitled to the benefit of the holding in Espinosa v. Florida, 505 U.S. 1079 (1992), that had been decided following his conviction. See Teague v. Lane, 489 U.S. 288, 294 (1989). He also argued that his trial attorney rendered ineffective assistance by coercing him into not taking the witness stand. The Court of Appeals for the Eleventh Circuit affirmed the conviction. The court held that the defendant's claim that he had improperly been coerced into not testifying was without merit because the only supporting evidence related solely to his first trial. Since the remedy would have been a new trial, the court reasoned that the defendant could not prevail as he had already received a new trial based upon the first jury not reaching a verdict. The court also held that there was "simply no evidence in the record that Lambrix was coerced not to testify in his second trial," despite his claim that the coercion lingered. See Lambrix, 72 F.3d at 1508. The Supreme Court affirmed, but only discussed the issues arising under Teague. The Court did not address Lambrix's assertion that his right to testify in his own behalf had been abridged.

III.

I am, of course, mindful that the trial judge here was trying to maintain order during this trial, and that Mr. Leggett was no doubt a rather difficult defendant. I am also mindful that Leggett's contumacious proclivities are irrelevant. "[A] contentious defendant has no fewer rights than a sympathetic one." Ortega, 843 F.2d at 261. Thus, I can only conclude that my colleagues' decision today will be yet another example of the old adage that "hard cases make

33

bad law." The majority decision will also go a long way toward eroding the holding in Pennycooke, as it will serve as an example of a situation that does not create a duty of inquiry despite the "exceptional, narrowly defined circumstances" here. That conclusion cannot be supported on this record. Accordingly, I must respectfully dissent from Part IIB of the majority opinion.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit