**UNITED STATES OF AMERICA,**

v.

**Dr. Stan T. STANFORD, Appellant.**

**No. 02–3129.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) June 2, 2003.

Decided June 17, 2003.

Before BARRY, FUENTES, and ROSENN Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Stan T. Stanford ("Stanford") appeals the judgment and sentence in this case of mail fraud. The District Court granted Stanford's habeas petition filed pursuant to 28 U.S.C. § 2255 and allowed Stanford to file this direct appeal of the judgment and conviction, entered on September 24, 1999, almost three years later. Stanford claims that: (1) the District Court erred in not ordering a competency hearing at the time of his guilty plea; (2) he received ineffective assistance of counsel; and (3) there was inexcusable delay of this appeal. Because we conclude that: (1) the District Court did not err by failing to order another competency hearing; (2) the claims of ineffective assistance of counsel are not properly before us; and (3) there was no due process violation as a result of the delay, we will affirm the judgment and sentence.

## I. Background

On September 25, 1997, a federal grand jury returned an indictment charging ap-

pellant Stan T. Stanford, III with 54 counts of mail fraud in violation of 18 U.S.C. § 1341. The indictment related to a scheme through which Stanford, a licensed chiropractor in Pennsylvania, falsely billed Independence Blue Cross and Pennsylvania Blue Shield through the United States mail from early 1994 through early 1996 for services that were not rendered and/or not medically necessary. These fraudulent bills resulted in checks being sent through the United States mail by Independence Blue Cross and Pennsylvania Blue Shield in payment of the submitted claims. The amount of the fraud was in excess of $200,000.

On October 16, 1997, at his arraignment, Stanford entered a plea of not guilty and was released on $50,000 bond. The District Court ordered a competency evaluation of Stanford. In a report dated October 24, 1997, Edward B. Guy, M.D., found Stanford competent despite the fact that Stanford had bipolar disorder in only partial remission. On February 5, 1998, defense counsel filed a motion seeking a ruling by the District Court as to Stanford's competency to stand trial. On February 10, 1998, the District Court granted the motion and ordered that Dr. Guy perform a complete diagnosis and work up of Stanford. After an examination of Stanford, Dr. Guy concluded that Stanford was not competent to stand trial. He recommended that Stanford be hospitalized and provided with appropriate medications and treatments to restore his competence.

The District Court held a hearing on March 18, 1998, and ordered that Stanford be committed to the custody of the Attorney General for placement at FCI Butner for treatment and further evaluation. Officials at FCI Butner prepared a report, dated May 17, 1998, finding Stanford competent because the symptoms of his Bipolar I disorder were sufficiently controlled

as to render him able to understand the nature and consequences of the proceedings against him.

The District Court held a competency hearing on June 26, 1998. The FCI Butner report was placed into evidence along with a new report, which found that Stanford was competent, written by Dr. Guy. Dr. Guy also testified that, in his opinion, Stanford should be released on bail because, in a structured living environment with loved ones who would monitor him, Stanford would remain competent. By order dated June 29, 1998, the District Court released Stanford on bail and placed him under house arrest and electronic monitoring. The District Court instructed that Stanford was to continue taking his medications as instructed.

On the day Stanford's trial was to begin, June 7, 1999, defense counsel informed the District Court that he had spoken at length with Stanford and Stanford's mother and that Stanford had decided to plead guilty. The District Court then placed Stanford under oath and asked him a series of questions about his intention to plead guilty. Stanford testified that the only medications he had taken in the past twenty-four hours were those prescribed to him because of his mental illness. He further testified that, because he was taking those medications, his mental illness would not affect his ability to understand the proceedings. He also testified that he had been meeting with a psychiatrist and a psychologist once a week since his release from FCI Butner. In response to an inquiry by the District Court, defense counsel stated that, based on his lengthy conversations with Stanford, he was convinced that Stanford was lucid, had properly weighed his options, and competent to enter a plea. The District Court then explained the constitutional rights that Stanford would be waiving, informed him about

how his right of appeal would be limited to certain issues, and advised him that he would be giving up the right to challenge the indictment and the evidence obtained against him.

Stanford then informed the District Court that he was satisfied with his attorney's representation, that they had met many times about how the sentencing guidelines might apply to his case, and that the decision to enter a guilty plea was his alone. The essential elements of mail fraud were explained to Stanford and the factual basis in support of the indictment was stated on the record. The District Court also informed Stanford that he could potentially lose his chiropractor's license as a result of plea. During the plea colloquy, defense counsel again stated on the record that he had held numerous meetings with Stanford to discuss Stanford's options. The District Court asked Stanford if he had made his own decision to plead guilty based on those conversations, and Stanford answered yes.

After a colloquy between the District Court and Stanford, the District Court concluded "that the defendant is competent to plea. The plea is free and voluntary and not the result of any force or threats or any promises; that there is a factual basis for the plea of guilty; that the defendant understands the charges, his legal rights, the maximum possible penalties and defendant understands that he is waiving his right to a trial by pleading guilty." Supp.App. 83a. Stanford then entered a guilty plea to all counts.

On September 20, 1999, the District Court held a final hearing in connection with Stanford's sentence. Stanford made no objections to the presentence report. The District Court adopted the factual findings and the guideline calculations in the report—a total offense level of 19 and a criminal history category I, resulting in an imprisonment range of 30–37 months imprisonment. The District Court granted Stanford's motion for a downward departure based on rehabilitation and sentenced Stanford to 15 months imprisonment, three years supervised release, $15,000 restitution, and a $2,700 special assessment.

## II. Discussion

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. As this is an appeal from a judgment and conviction entered on September 24, 1999, a final decision of a district court, we exercise jurisdiction under 28 U.S.C. § 1291.

Stanford essentially raises three issues on appeal. He claims that: (1) the District Court erred in not ordering a competency hearing at the time of his guilty plea; (2) he received ineffective assistance of counsel; and (3) there was inexcusable and excessive delay of this appeal. We will address these arguments in turn.

### A. Competency Hearing

■ While making both substantive due process and procedural due process claims, Stanford basically argues that the District Court erred in failing to order a competency hearing prior to his guilty plea hearing. We have previously stated that in determining whether a district court properly applied the standard for determining the necessity of a competency hearing, our review is plenary. *United States v. Renfroe*, 825 F.2d 763, 766 (3d Cir.1987).

The conviction of a legally incompetent defendant violates due process. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). A criminal defendant whose competency is in question may be subjected to a competency hearing. 18 U.S.C. § 4241(a). If neither the defendant nor the government moves for a competency hearing, a trial court may do so on its own motion. *Id.* "[T]he trial court must

have 'reasonable cause' to believe that the defendant is 'presently' suffering from an impairment resulting in mental incompetency." *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir.1998) (citations omitted). "A court must simply look at the unique circumstances of the case and decide whether the defendant (1) has the capacity to assist in her or his own defense and (2) comprehends the nature and possible consequences of a trial." *Id.* at 242.

In applying this two-part test to Stanford's plea hearing, we conclude that the District Court did not err in finding that Stanford had the capacity to assist in his defense and comprehended the nature and consequences of the proceeding. First of all, while the District Court did not hold a competency hearing right before the plea hearing, the District Court had already held a hearing regarding Stanford's competency. Dr. Guy assessed Stanford's condition on several occasions and professionals at FCI Butner observed and treated Stanford during his court-ordered stay at that facility. Dr. Guy and the officials at FCI Butner ultimately concluded that Stanford was fit to stand trial. Based on this information, the District Court ruled that Stanford was competent and ordered him to continue taking his medications as instructed while under house arrest.

In addition, at Stanford's plea hearing, before Stanford actually entered his plea of guilty, the District Court engaged Stanford and defense counsel in a lengthy discussion. Both defense counsel and Stanford indicated that they had met together with Stanford's mother numerous times, including for more than three hours on the day before the hearing, in trying to decide on the best course of action. Such regular interaction between Stanford and his counsel in ultimately deciding on a plea of guilty indicates that Stanford was capable of assisting defense counsel with his defense.

Finally, Stanford informed the District Court at his plea hearing that he was under the care of a psychologist and a psychiatrist at that time and was continuing to take his medications as instructed. He further stated that those medications helped him to understand the proceedings. Defense counsel reported that he believed Stanford to be lucid and that Stanford had properly weighed his options. Stanford confirmed this claim by explaining that defense counsel had discussed the consequences of a guilty plea with him and how the sentencing guidelines might apply to his case. Stanford informed the Court that he was satisfied with his attorney's representation and that the decision to plead guilty was his alone. Based on this testimony about Stanford's adherence to psychological care and about discussions regarding the ramifications of a guilty plea, the District Court did not err in concluding that Stanford comprehended the nature and possible consequences of a guilty plea.

Given the circumstances of this case, the District Court had no 'reasonable cause' to believe that Stanford was 'presently' suffering from an impairment resulting in mental incompetency at the time of his plea. *Leggett*, 162 F.3d at 241. We decline to find that the District Court erred by failing to sua sponte order another competency hearing at the time of Stanford's guilty plea.

**B. *Ineffective Assistance of Counsel***

■ Stanford next argues that he received ineffective assistance of counsel because: (1) defense counsel disregarded the fact that Stanford was incompetent during the pre-trial and plea hearings; (2) defense counsel wrongly waived Stanford's arguments in respect to the admissibility of tape recordings; (3) there was judicial deception and actual innocence of charges;

(4) defense counsel allowed the use of perjured testimony by the government; and (5) there was a denial of key witnesses at the pre-trial motions hearing. Stanford raised these issues before the District Court along with a claim of ineffective assistance of counsel due to his attorney's failure to file an appeal. Stanford ultimately withdrew the other issues presented to the District Court in order to proceed with the claim based on his attorney's failure to file an appeal. After hearing oral argument on this claim, the District Court stated that it would grant "defendant's motion to vacate, set aside or correct sentence under Section 2255, due to the ineffective assistance of his counsel in failing to file an appeal and [would] allow an appeal nunc pro tunc." App. Vol. II at 192. Thus, as a remedy for what the District Court found to be ineffective assistance of counsel, Stanford was permitted to file this direct appeal.

Stanford's attempt to raise his other claims of ineffective assistance of counsel again on this appeal are improper. First, Stanford specifically withdrew all other claims before the District Court in order to proceed with his claim based on his attorney's failure to file an appeal. Second, the District Court allowed Stanford to file this direct appeal to remedy what it ruled was ineffective assistance by Stanford's prior counsel. In sum, we conclude that we may not consider Stanford's claims of ineffective assistance of counsel as they are not properly before us.

## C. *Inexcusable Delay*

■ Finally, Stanford argues that, due to the inexcusable and excessive delay of this direct appeal for three years, this Court should vacate his conviction and dismiss the indictment with prejudice. We have previously recognized that the Due Process Clause extends procedural safeguards to defendants in appeals as of right. *Burkett v. Fulcomer,* 951 F.2d 1431, 1438 (3d Cir.1991). In *Burkett,* we dealt with the issues of delay between arrest and sentencing, delay between a guilty verdict and sentencing, and delay in resolving a direct appeal. We did not address the issue of delay in a decision on a 28 U.S.C. § 2255 motion. Because the District Court ultimately granted Stanford's 2255 motion based on his attorney's failure to file an appeal and then allowed Stanford to file a direct appeal, Stanford now advocates that we treat the delay in his case as a delay in resolving a direct appeal.

Even if we were to accept Stanford's reasoning, we would find no due process violation. "We are to assess four factors in determining whether the constraints imposed by speedy trial and due process rights have been honored: (1) length of the delay, (2) reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." *Id.* (citing *Barker v. Wingo,* 407 U.S. 514, 517–38, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). While the delay between the initial filing of the 2255 motion, on July 17, 2000, and the decision on the motion, on July 24, 2002, was 24 months, the delay was not due to inaction on the part of the government or the District Court. For example, the District Court granted Stanford 120 days to file an amended 2255 petition, Stanford requested appointment of new counsel to replace his previous counsel who sought leave to withdraw, Stanford filed numerous pro se submissions despite the fact that new counsel had been appointed, and Stanford did not withdraw his other claims until July 23, 2002. The government and the District Court respectively needed time to respond to and consider Stanford's motions and filings, and Stanford's new counsel needed time to acquaint himself with the facts of the case.

Further, while Stanford asserted his rights, he suffered no great prejudice from

the delay of a decision on his 2255 petition. Stanford was released from FCI Fort Dix on August 23, 2000 after completing his sentence of imprisonment. His amended 2255 petition was not filed until December 1, 2000. Thus, during the pendency of his amended petition, Stanford was a free man.

Even if we were to treat the delay in this case as a delay in ruling on a direct appeal, in balancing the factors of the *Barker v. Wingo* test, we conclude that Stanford suffered no due process violation.[1]

### III. Conclusion

Accordingly, for the reasons stated above, we affirm the original judgment of conviction and sentence of the District Court.

---

1. We reject Stanford's numerous other allegations involving illegal and unethical acts by law enforcement, the prosecution, the District Court, and previous defense counsel. All are either without merit or unripe for resolution on this appeal.