UNITED STATES of America,

v.

**Warren JACKSON, Defendant.**

**No. CRIM.A.03–793.**

United States District Court,
E.D. Pennsylvania.

Nov. 1, 2004.

Todd Schulman, Esquire, U.S. Attorney's Office, Philadelphia, PA, for Plaintiffs.

Eric A. Vos, Esquire, Federal Defender Association, Philadelphia, PA, for Defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATZ, Senior District Judge.

The United States of America brings charges against Defendant Warren Jackson ("Jackson"), a/k/a "G" for attempted distribution of cocaine base ("crack"), possession with intent to distribute cocaine base, and possession of a firearm by a previously convicted felon. Presently before this Court is the question as to whether Defendant is competent to stand trial under provisions of 18 U.S.C. § 4241. Defense counsel has furnished a psychological evaluation of Jackson prepared by his own expert in September 2004; the United States Attorney's Office has provided a forensic evaluation submitted by Butner Federal Correctional Institution, North Carolina ("Butner"), in April 2004. For the reasons set forth below, this Court finds Defendant competent to stand trial.

*I. Findings of Fact*

1. Defendant was born on December 30, 1970 in Philadelphia, Pennsylvania.

2. Defendant was the oldest of eight siblings.

3. Defendant's parents separated by the time Defendant was twelve years old and Defendant has had no contact with his father since the separation.

4. Defendant's mother remarried when Defendant was approximately nine years old.

5. While Defendant says his stepfather beat him regularly when he was young, he does not consider it to have risen to the level of physical abuse. Defendant denies any sexual or emotional abuse as a child

6. Defendant dropped out of school in the 10th grade. Two suspensions for fighting were reported.

7. Defendant has held a series of jobs, as a dishwasher, grocery clerk, construction worker, janitor and various other temporary positions. He last job was at Kentucky Fried Chicken as a cook and dishwasher for two years; he had been unemployed for approximately six months at the time of his arrest.

8. Defendant has never been married.

9. Defendant has four children by three different women. He has provided no financial support for these children.

10. Defendant indicates he began drinking around age 20 to 21. He exhibits some alcohol dependence.

11. Defendant began using cocaine regularly at age 22 to 23. He began by snorting cocaine but after several months he switched to crack cocaine.

12. Defendant used crack approximately every other day in the amount of 12 to 14 vials a day.

13. Defendant stopped using crack in 1993 and remained clean for two years. In 1995, he began using crack again and was arrested. He remained clean again from 1999 to 2003, when he began using crack again.

14. Defendant was court-ordered to attend outpatient drug treatment following a 1998 conviction for possession of cocaine. He did not complete the treatment.

15. Defendant was also enrolled in drug programs in South Philadelphia on three occasions but does not remember the names of the programs.

16. Defendant met with a psychiatrist for about four months but does not remember her name.

17. Defendant has never been on any medications for anxiety or depression.

18. In either 1998 or 2001, defendant was robbed at gunpoint and shot in the hand and the back of the head. He was hospitalized for two weeks and placed on Percocet for pain. He denied significant neurological aftereffects but reported subsequent headaches and nightmares, consistent with mild Posttraumatic Stress Disorder. He continues to complain of such symptoms.

19. Following the robbery and the shooting, Defendant's cocaine use escalated, resulting in a accidental overdose and subsequent hospitalization in 2003. He exhibits cocaine dependence.

20. Defendant was again convicted in 1998 for possession with intent to distribute a controlled substance, and was convicted in 1998 and 1999 on three more occasions on the same charges.

21. Defendant is alert, oriented and in no acute distress. His thoughts are organized, sequential and goal-directed. Attention, concentration, memory, comprehension and perception are intact. No medications were prescribed throughout his stay at Butner.

22. Defendant has no perceptual distortions, thought insertion or broadcasting, delusions, magical powers or other psychotic phenomena. He exhibits no symptoms of affective disorder, psychosis or neurological impairment.

23. Defendant complained on occasion at Butner of insomnia and nightmares.

24. Defendant's mental ability is low average to below average. He has an IQ equivalent of 70 (2nd percentile), which is the dividing line between Retardation and Borderline Intellectual Functioning. His reading level is equivalent to the average child in the sixth grade.

25. The Butner evaluator, forensic psychologist Dr. Kevin McBride, diagnosed Defendant with Malingering—intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as evading prosecution. Defendant was uncooperative, obstructive and passive-aggressive during the evaluation and feigned cognitive dysfunction.

26. Defendant's expert evaluator, clinical and forensic psychologist Dr. Gerald Cooke, finds that Defendant shows a tendency to exaggerate.

27. McBride also diagnosed Defendant with Antisocial Personality Disorder, a central feature of which is a tendency to disregard the wishes, rights or feelings of others. Defendant exhibits symptoms such as financial irresponsibility (his failure to provide child support) and irresponsible work behavior (his significant periods of unemployment despite job opportunities).

28. Defendant pretended not to know the difference between a plea of "guilty" and "not guilty," but stated that he understood what would happen in the courtroom in his case and possessed awareness of appropriate courtroom demeanor. He knew what the charges were against him and understood the functions of courtroom participants. He was able to present his account adequately. He was able to differentiate between the crimes of simple possession and possession with an intent to distribute.

29. Defendant tends to start answering questions after a few words, before the questions are finished being asked, and thus does not effectively answer. He becomes confused easily by complicated or lengthy sentence structures. He often requires refocusing.

30. Defendant exhibits varying levels of anxiety, depression and stress; he sees himself as an addict who needs help as opposed to a criminal.

31. Defendant does not suffer from mental disease or defect.

32. Both Defendant's expert and the government's expert found Defendant competent to stand trial.

*II. Conclusions of Law*

1. A court shall order a competency hearing only if there is a reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to under the nature and consequences of the proceedings against him or to assist properly in his defense. 18 U.S.C. § 4241(a).

2. After the hearing, the defendant is deemed incompetent only if the court determines, beyond a preponderance of the evidence, that he is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. 18 U.S.C. § 4241(d).

3. The defendant must have "a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and must possess "a rational as well as factual understanding of the proceedings against him". *Jermyn v. Horn,* 266 F.3d 257, 283 (3d Cir.2001)(quoting *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

3. One factor a court must consider when determining if the defendant is competent is a medical opinion regarding a defendant's competence. *United States v. Jones,* 336 F.3d 245, 257 (3d Cir.2003); *United States v. Leggett,* 162 F.3d 237, 242 (3d Cir.1998); *see also United States v. Stanford,* 69 Fed.Appx. 518, 522 (3d Cir. 2003) (district court did not err in finding that defendant was competent when two medical professionals opined that defendant was fit to stand trial) (unpublished opinion).

*III.   Conclusion*

For the foregoing reasons, Defendant is deemed able to understand the nature and consequences of the proceedings against him and is found competent to stand trial. An appropriate order follows.

### ORDER

This matter having come before the Court by way of defendant's request for a competency hearing, 18 U.S.C. § 4241(a), the Court, based on two separate reports by mental health professionals that opine that defendant is competent to stand trial, and there being no evidence to the contrary, and for the other reasons stated in the record, finds beyond a preponderance of the evidence, that defendant is competent in that he is not presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, 18 U.S.C. § 4241(d).

IT IS THEREFORE ORDERED that defendant is scheduled for trial on November 15, 2004 at 10AM.