IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2008

## STATE OF TENNESSEE v. MICHAEL SMALL

**Appeal from the Criminal Court for Shelby County**
**No. 01-00926     Joseph B. Dailey, Judge**

---

**No. W2007-01723-CCA-R3-CD  - Filed February 10, 2009**

---

Defendant, Michael Small, was convicted by a Shelby County jury of two counts of aggravated robbery and sentenced by the trial court as a Range II, multiple offender to twenty years in the Department of Correction.  Defendant raised several issues in his original direct appeal, including whether the trial court erred in finding that he had implicitly waived his right to the assistance of counsel at the sentencing phase of his trial.  Without addressing the other issues, this court remanded the case to the trial court with instructions to hold an evidentiary hearing with respect to the implicit waiver or forfeiture of counsel issue.  *See State v. Michael Small*, No. W2003-02014-CCA-R3-CD, 2006 WL 3327845, at *3 (Tenn. Crim. App., at Jackson, Nov. 15, 2006).  At the conclusion of the evidentiary hearing, the trial court found that Defendant had forfeited his right to counsel by physically assaulting his attorney.  Defendant now appeals, arguing that (1) the trial court erred in finding that his actions warranted the forfeiture of counsel, and (2) the trial court should have granted his motion for recusal.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Larry E. Copeland, Jr., Memphis, Tennessee, for the appellant, Michael Small.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; Amy Weirich, Assistant District Attorney General; and Alexia Fulgham, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

## I.  Background

Our original direct appeal opinion provides a synopsis of the procedural history of the case at the time it first came before us on appeal:

On January 30, 2001, the Defendant was indicted for two counts of aggravated robbery. Following a jury trial, the Defendant was convicted of both counts of aggravated robbery. At sentencing, the trial judge ordered the Defendant to proceed pro se because he allegedly "hit his attorney . . . in the face at least twice, knocking him to the ground, blooding [sic] his face." The trial judge merged the two counts of aggravated robbery and sentenced the Defendant as a Range II, multiple offender to twenty years in the Department of Correction. The Defendant did not file a motion for a new trial. This timely appeal followed.

*Id.* at *2. Because the record in the original direct appeal contained no evidence about the altercation between Defendant and his counsel, we remanded the case to the trial court with instructions to "conduct an evidentiary hearing to determine whether the Defendant's actions warranted the determination that he had forfeited or implicitly waived his right to counsel." *Id.* at *3.

At the July 26, 2007, hearing on remand, the attorney who represented Defendant at trial testified that he had been appointed to represent Defendant on several matters, including the instant case. He said that the assault occurred when he went to speak to Defendant in the lockup area immediately after the jury had rendered its verdict. He stated that he wanted to talk briefly with Defendant about sentencing and his other upcoming trials; Defendant, however, was animated and agitated as he expressed his discontent with the outcome of the trial. Counsel explained that, prior to that time, he "had had some concerns regarding communications [he] had with [Defendant] to the extent [that he had] instructed sheriff's deputies not to provide [Defendant] with an ink pen during the trial," for fear that he would use it to "lash out" at someone in the courtroom. He, therefore, told Defendant that their conversation was not productive and that he would come back to see him after Defendant had calmed down.

Counsel testified that he had turned to go and was reaching for the door when Defendant struck him on the side of the face. He recalled that Defendant struck him in the face once more before he was able to turn around. He said that the sheriff's deputy in lockup came in at that point and, together with other officers, subdued Defendant. Counsel then went into the courtroom, informed the trial court of what had just transpired, and was immediately relieved from representation.

When asked if he was injured by Defendant's blows, counsel responded:

More probably angry just that it happened than injured, I mean, I got a pretty good lick to the mouth, bloody lip. That was about it. I would have liked to have seen it coming. It would have been nice if he'd decided to take a swing to have done it instead of the sucker punch he pulled, but that's what he decided to do. I think he struck me twice before I got turned around and then I turned around he stopped [sic].

On cross-examination, counsel testified that he did not learn about Defendant's allegation that he had uttered a racial slur toward him until Defendant's assault trial that stemmed from the incident. Counsel adamantly and unequivocally denied having ever made any sort of racial slur

toward Defendant or anyone and said that those who knew him, including Defendant's own defense attorney, knew that it was not in his character to do so.

Counsel conceded that the statement Defendant attributed to him, "The reason that it went that way is 'cause you were acting like a monkey," if made, would be sufficient to rupture the attorney-client relationship:

> Q       You would agree with me however that that - - although I agree with you that you didn't make the statement, but you would agree with me that if the statement was made, would that be enough to put a rupture in the attorney-client - -
>
> A       Absolutely, if that statement was made, unequivocally it would . . . .

He reiterated, however, that he would never make such a statement.

Shelby County Sheriff's Deputy Vernon Hunter, the officer in lockup when the assault occurred, testified that immediately before the assault he overheard counsel say something along the lines of "if you wasn't acting like a monkey, or something like that." On cross-examination, he said he was five to six feet from the men at the time.

Defendant testified that he was complaining to counsel about his performance at trial when counsel "said something like, well, if you hadn't been acting like such a monkey or monkeying around or something." Defendant stated that when counsel made the statement, he "just snapped and hit him." He said he had been insulted by the words.

The trial court noted for the record that Defendant pled guilty to assault in connection with the incident and was sentenced to eleven months, twenty-nine days and a $1000 fine.

Counsel, recalled by the State, once again vehemently denied that he ever made the alleged statement:

> [A]nd I want to be so clear because this flies in the face of absolutely everything I believe in, would say, would ever do, or fee[l] in the core of my being. I never said that ever, ever, and I'm not sure as far as what the officer said up here, I have no idea what he thinks he heard, but as you know when I did not want to waive privilege, what I said to [Defendant] was said in the corner six feet or more away from the officer and when [Defendant] became animated, then that's when I took my leave and left that area.

At the conclusion of the hearing, the trial court, accrediting the testimony of counsel, found that counsel did not direct any sort of racial slur toward Defendant. The court further found, however, that the alleged racial slur was a "non-issue," in that Defendant's physical assault of counsel, regardless of what was said, constituted sufficiently egregious behavior to result in the forfeiture of his right to appointed counsel.

## II. Analysis

### Forfeiture of Counsel

Defendant contends that the trial court erred in finding that his conduct was sufficiently egregious to warrant a forfeiture of the right to counsel. He argues that his physical attack against counsel was provoked by counsel's racial slur, which distinguishes his case from *United States v. Leggett*, 162 F.3d 237, 250 (3d Cir. 1998), in which the Third Circuit Court of Appeals concluded that a defendant's unprovoked physical attack against his attorney in open court constituted the type of extremely serious misconduct that amounted to a forfeiture of the right to counsel. He further argues that his case is also distinguishable from *State v. Carruthers*, 35 S.W.3d 516 (Tenn. 2000), because there was no evidence that he engaged in a pattern of disruptive or abusive conduct in the face of repeated warnings from the trial court. The State responds by arguing, *inter alia*, that Defendant's assault against counsel, regardless of what counsel may or may not have said, constitutes the sort of extreme and egregious behavior sufficient to justify a forfeiture of the right to counsel. We agree with the State.

Both the United States and Tennessee Constitutions guarantee an indigent criminal defendant the right to the assistance of appointed counsel at trial. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. An indigent defendant may, however, "implicitly waive or forfeit the right to counsel by utilizing that right to manipulate, delay, or disrupt trial proceedings." *Carruthers*, 35 S.W.3d at 549. The *Carruthers* court recognized that implicit waiver may be found when a defendant persists in disruptive misbehavior despite repeated warnings from the trial court, while forfeiture may occur without prior warning based on a defendant's extreme and egregious conduct. *Id.* at 549-50. The court then concluded that the record in Carruthers' case supported a finding of both implicit waiver, based on the trial court's repeated warnings that Carruthers would lose his right to counsel if he continued in his misbehavior, and of forfeiture, based on Carruthers' extreme and egregious conduct which consisted of his unfounded accusations and threats against a succession of appointed counsel and their families and staff. *Id.*

A defendant's physical battery of his attorney is the kind of extreme and egregious behavior that may support a finding of forfeiture of counsel. *See Leggett*, 162 F.3d at 250. The defendant in *Leggett* launched an unprovoked physical attack upon his attorney in the courtroom, punching the attorney in the head, straddling his body, and choking, scratching, and spitting at him. *Id.* at 240. After noting that forfeiture of counsel had been found in other cases based on a defendant's mere verbal threats against counsel, the Third Circuit Court of Appeals concluded that Leggett's "unprovoked physical battery" of his attorney qualified as "'extremely serious misconduct' that amounts to the forfeiture of the right to counsel." 162 F.3d at 250 (quoting *United States v. Goldberg*, 67 F.3d 1092, 1102 (3d Cir. 1995)).

Defendant argues that his attack, unlike Leggett's, was provoked by counsel's alleged racial slur, which was overheard by the sheriff's deputy in lockup. The trial court, however, accredited the testimony of counsel that no such racial slur was uttered. The trial court is in the best position to judge the credibility of witnesses, and this court will defer to those credibility determinations on appeal. *See State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996) ("Questions of credibility of the

witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact."). The record establishes that Defendant struck counsel in the face from behind, bloodying counsel's lip. Counsel, who was caught completely off-guard, characterized the attack as a "sucker punch." We agree with the trial court and the State that Defendant's behavior was sufficiently egregious to warrant a forfeiture of the right to appointed counsel, regardless of whether the alleged comment was made. We conclude, therefore, that the trial court did not err in finding that Defendant forfeited his right to the assistance of appointed counsel at the post-trial phases of his case.

**Denial of Motion to Recuse**

Defendant also contends that the trial judge abused its discretion in denying his motion for recusal. He asserts that the judge, who presided over his original trial and was sitting by designation for the remand hearing, himself recognized that his participation in the remand hearing appeared to present a conflict. Defendant therefore argues that the judge should have recused himself from the case. We respectfully disagree.

The State explains in its brief that the trial judge, who had retired from Division V of the Shelby County Criminal Court, where Defendant's original trial was held, was one of several retired judges who sat in Division VI while the appointment of a new judge to replace one who had retired from that division was pending. [Brief, 10] At the beginning of the remand hearing, Defendant's counsel questioned the propriety of the judge's presiding over the remand hearing, and the following exchange occurred:

> [DEFENSE COUNSEL]: Maybe something's come up. Should you hear this since you were the one they reversed?
>
> THE COURT: Well, you know, I thought about that, and - -
>
> [DEFENSE COUNSEL]: I'm talking about procedurally.
>
> THE COURT: - - I don't know why not. If I were still on the bench, I would. This is the type of hearing that I could have held when it happened if I had elected to go that route instead of this route.
>
> . . . .
>
> THE COURT: I think that while at first blush it may seem to be a conflict for me to hear it, if I were still on the bench, I would be hearing it. It would be sent back to me to be heard I think to make a factual determination. [Vol. III, 2-3]

The decision of whether to grant a recusal rests within the discretion of the trial judge and will not be overturned on appeal unless clear abuse of that discretion appears on the face of the record. *See State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995). A motion to recuse should be granted if the judge has any doubt as to his or her ability to preside impartially in the case, or

-5-

whenever he or she believes that his or her impartiality can reasonably be questioned. Tenn. Sup. Ct. R. 10, Canon 3(E); *see Lackey v. State*, 578 S.W.2d 101, 104 (Tenn. Crim. App. 1978). Moreover, recusal is warranted "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994) (footnote and citation omitted). In other words, the determining standard is an objective one, not a subjective one. *See id.* Courts must avoid the appearance of partiality as well as partiality itself. *See id.* at 823. However, a judge is in no way disqualified merely because he has participated in other legal proceedings against the same person. *See Hines*, 919 S.W.2d at 578 (citing *King v. State*, 216 Tenn. 215, 225-26, 391 S.W.2d 637, 642 (1965)).

We find no abuse of discretion on the part of the trial judge in denying the motion for recusal. As the judge noted, since this court remanded the case to the trial court with instructions to hold an evidentiary hearing, the case would have been before him in Division V had he not retired. Nothing about the judge's return from retirement to hear the case in Division VI, or his comments regarding his prior knowledge of Defendant, suggests that he was biased against Defendant or could not be impartial in his ruling. We agree with the State that Defendant is reading too much into the judge's initial comment that the case appeared "at first blush" to create a conflict. Defendant is not, therefore, entitled to relief on the basis of this claim.

## CONCLUSION

Based on our review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE