NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1478

UNITED STATES OF AMERICA

v.

HENRY RAUSER,
                                        Appellant.

Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 06-cr-00440
(Honorable James Knoll Gardner)

Submitted Under Third Circuit LAR 34.1(a)
February 23, 2010

Before:  SCIRICA, Chief Judge, and CHAGARES, Circuit Judges,
and RODRIGUEZ,[*] District Judge

(Filed   April 30, 2010 )

OPINION OF THE COURT

RODRIGUEZ, Senior District Judge.

This is an appeal from the judgment of conviction and sentence of Henry Rauser

for possession with intent to distribute five grams or more of crack cocaine in violation of

_____

[*]The Honorable Joseph H. Rodriguez, Senior United States District Judge for the
District of New Jersey, sitting by designation

21 U.S.C. § 841(a)(1). The District Court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231 and we have jurisdiction to hear this appeal under 28 U.S.C. § 1291. Rauser raises three issues on appeal. First, whether the District Court erred in allowing Rauser to represent himself at trial. Second, whether the District Court erred in denying Rauser's motion to suppress the crack cocaine found in a pair of jeans lying on his bedroom floor. Third, whether the District Court erred at sentencing when it found that his offense level was subject to a two level increase.

I.

Rauser argues that the District Court erred in allowing him to represent himself at trial because he had exhibited numerous instances of bizarre and irrational behavior that should have alerted the court that he was not competent to stand trial or not competent to represent himself at trial or his sentencing.

A District Court's factual findings regarding competency are reviewed for clear error. United States v. Leggett, 162 F.3d 237, 241 (3d Cir. 1998).[1] Further, "the trial judge, particularly one such as the trial judge in this case, who presided over one of [the defendant's] competency hearings and his . . . trial[], will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individual circumstances of a

_____

[1]That is, "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985) (citations omitted).

particular defendant." Indiana v. Edwards, 128 S. Ct. 2379, 2387 (2008) (holding that under a heightened standard, states were permitted to appoint counsel to represent severely mentally ill criminal defendants who do not possess the mental wherewithal to self-representation, yet are competent to stand trial). The Sixth Amendment protects a defendant's right to counsel, as well as his right to refuse counsel and represent himself. Faretta v. California, 422 U.S. 806, 814 (1975). Accordingly, a defendant who knowingly, voluntarily, and intelligently waives the right to counsel generally must be permitted to defend himself at trial. Id. at 835. In making that determination, the District Court should establish that the defendant: (1) has "clearly and unequivocally" asserted his desire to represent himself; (2) "understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other facts important to a general understanding of the risks involved"; and (3) is competent to stand trial. United States v. Peppers, 302 F.3d 120, 132, 134 (3d Cir. 2002).

Prior to allowing Rauser to represent himself, the District Judge held a hearing and conducted a detailed colloquy. The District Judge first inquired whether the medication Rauser was taking would prevent him from thinking clearly during the hearing. Although Rauser complained about the way the Bureau of Prisons handled his medication, he confirmed he was physically and mentally able to think clearly and understand what was happening in the courtroom. The District Judge and Rauser then engaged in a lengthy discussion about his reasons for proceeding pro se and his ability to represent himself, including his educational background and his familiarity with the legal system and

3

criminal proceedings. Rauser stressed that he had represented himself in six prior criminal trials (four burglary cases, a harassment case, and a marijuana case), and had prevailed in two of the cases and one was declared a mistrial. Rauser also stated that he was a "jailhouse lawyer" for many inmates, and had his own copies of the federal and state criminal codes, as well as boxes of case law. (Suppl. App. 25-26.) The District Judge confirmed that Rauser understood the nature of the charge and the maximum penalty that could be imposed in his case. The District Judge explained the advantages of proceeding with counsel, as compared to the dangers of self representation, and stressed the importance of effective advocacy throughout the process. The District Judge explained that experienced counsel could provide invaluable assistance in navigating the rules of evidence and criminal procedure, as well as pursuing appropriate legal arguments. The District Judge counseled Rauser against self-representation:

> I strongly urge you not to try to represent yourself, in your own best interest. You're not dealing with a harassment case here, you're dealing with a case where you could go to prison for your entire life and, so, it's important that you have the best possible representation. And I realize that in defending yourself in burglary cases, those were serious crimes as well, but given your prior record and given the Federal Sentencing Guidelines, which the Court must compute and must consider -- I am not required to follow them, but I must consider them -- and given the way your past record works for computing sentences, that makes this case potentially a life-imprisonment case if you were convicted. So, we're talking very serious stuff here. You understand that?

Rauser acknowledged that he understood the risks and that he knowingly and voluntarily accepted those risks and wished to represent himself. Rauser's counsel stated that he was prepared to act as standby counsel, and that Rauser was determined to

4

represent himself. The District Judge concluded that Rauser had clearly and unequivocally asserted his desire to proceed pro se, and understood the nature of the charges, the range of possible punishments, the potential defenses, the technical problems he might encounter, and the risks involved with self representation. The District Judge also concluded that Rauser was competent to represent himself, and other than noting "the somewhat bizarre nature of some of the communications," there was no indication that he was not competent. (Suppl. App. 52.)

Subsequently, Rauser's stand-by counsel filed a "Motion for Defendant to be Independently Examined and Transferred to an Appropriate Medical Facility for the Administration of Necessary Medical Care." The District Judge heard the motion and made factual findings – including that Rauser would not take his heart medication in the future; that he had written numerous letters to the court and counsel that bordered on the bizarre; that he had recently cut the front of his throat, wrist, forearms, and hands with a razor; and made decisions against his counsel's advice which counsel believed to be irrational. At the request of defense counsel and the government, the District Judge ordered that Rauser be sent to the Federal Medical Center in Butner, North Carolina, for a comprehensive medical, psychological, psychiatric, and competency evaluation and specifically asked the examiners to determine if the defendant was competent to stand trial and was "physically and medically able" to represent himself at trial. (Suppl. App. 122.)

5

After a two-and-a-half month evaluation, the mental health staff at Butner determined that Rauser was not suffering from a severe mental disease or defect, and was competent to stand trial. The District Judge summarized the findings of the report at a competency hearing and found that even though Rauser had been diagnosed as a "malingerer"[2] and exhibited certain anti-social personality traits, the doctors concluded he was mentally competent and medically able to represent himself. (Suppl. App. 122-28.)

Rauser raised no objection to the report's competency conclusion, nor did he present any medical evidence to contradict its findings. Defense counsel confirmed that Rauser was much more lucid than he had been before his stay at Butner: "As an officer of the Court, I can tell you, he's much more lucid in my dealings with him now than he was before he went [to Butner]." Suppl. App. 124. The District Court summarized its findings from the prior competency hearing and found no reason to disturb its conclusion that Rauser clearly asserted his desire to proceed pro se, and was aware of the risks of doing so and the range of possible punishments and defenses. Rauser's competency had been confirmed by the evaluation at Butner.

---

[2]The Butner report noted that the DSM-IV-TR defined malingering as "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." The DSMIV-TR indicates that malingering should be suspected when: "(1) it occurs in a medico-legal context, such as forensic examination; (2) there is marked discrepancy between the person's claimed stress or disability and the objective findings; (3) there is a lack of cooperation during the diagnostic evaluation and in complying with the prescribed treatment regimen; and (4) there is the presence of Antisocial Personality Disorder."

At trial, Rauser took a lead role. He examined witnesses and argued many of the motions. Nonetheless, near the end of the defense's case, Rauser sought to enter a plea of not guilty by reason of insanity. The request was denied based on the previous finding of competency. The court found nothing in Rauser's performance or conduct to question his competency. The court concluded that the findings in the Butner report were corroborated by Rauser's behavior during the trial. Rauser thereafter asked to subpoena and present medical records in order to demonstrate that he had a history of mental illness. The court denied the request because the it was concerned that Rauser was trying "to subvert these proceedings," and "was going to use this as his trump card, as his insurance policy when all else had failed." (Suppl. App. 3017.)

The District Judge observed that Rauser's performance at trial demonstrated his sanity:

> [O]ne only need read the pages and pages of testimony in this case and the pages and pages of intelligent and logical, albeit repetitious and sometimes irrelevant, questions asked by Mr. Rauser, as well as his arguments to the jury, his arguments to the Court, to know that Mr. Rauser is a sane man. Mr. Rauser can make good and cogent arguments and often does. They're not always on the mark and they're not always winners but this is not Mr. Rauser; this is an unsuccessful attempt by Mr. Rauser to appear to be incompetent for his own purposes of creating a fallback position or an insurance policy here, should he get convicted by this jury, as evidence that the judge committed reversible error in not allowing him to change his plea to one of guilty but insane.

(Suppl. App. 3220-22.)

After the jury returned a guilty verdict, Rauser requested another competency hearing. The District Court reevaluated its decision and found that Rauser remained

7

"legally competent, legally sane and mentally capable of representing himself and assisting in his own defense at the trial of this case as well as at his sentencing." (Suppl. App. 668.)

After a review of the record of the proceedings below, this Court finds that clear error was not committed by the District Judge, who was in the best position to evaluate Rauser's capabilities, and went out of his way to do so.

## II.

Next, Rauser argues that the District Court erred in denying his motion to suppress the crack cocaine found in a pair of jeans lying on his bedroom floor in his house. He contends that the affidavit of probable cause in support of the search warrant contained false statements, as neither of the two confidential informants relied upon could be deemed "reliable." Specifically, Rauser argues that the warrant should not have been approved because there was insufficient information on its face regarding the past performance of either confidential informant for a judicial officer to adjudge their reliability.

"This Court reviews the district court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." United Stated v. Perez, 280 F.3d 318, 336 (3d Cir. 2002) (citation omitted). Controlled buys have been sufficient to establish probable cause. See, e.g., United States v. Sidwell, 440 F.3d 865, 869 (7th Cir. 2006). In any event, a determination of probable cause rests on the totality of the circumstances,

8

which may include information provided by reliable informants as well as the personal knowledge and observation of law enforcement officers.  Illinois v. Gates, 462 U.S. 213, 230 (1983).

At the hearing on Rauser's motion to suppress, the detective who submitted the affidavit of probable cause to obtain the search warrant admitted that one of the confidential informants relied upon had not been truthful with the police when he previously told them that he and Rauser had been present at a shooting in Rauser's house. The detective therefore described the informant in the affidavit as "an untested confidential informant."  (Suppl. App. 3551.)  Another detective also described the informant as "untested" because he was not truthful with the police initially, but was confronted about that before the police had him make a second controlled buy from Rauser.  Further, this detective knew that the informant was a drug user and therefore did not deem him "reliable."

In any event, the police arranged for the informant to make two controlled purchases of crack cocaine from Rauser.  In each case, the informant was searched before he entered Rauser's house and after he left the residence.  Additionally, a detective independently verified other information provided by the informant regarding Rauser's occupancy of the residence and ownership of a particular vehicle.  Rauser's prior narcotics convictions from 1979 and 1993 were also included in the affidavit of probable cause.

Considering the totality of the circumstances presented to the District Court, the Court has no reason to invalidate the search warrant validly obtained and executed on Rauser's house.

III.

Finally, Rauser has argued that the District Court erred at sentencing, when it found that his offense level was subject to a two level increase pursuant to section 2D1.1(b)(1) of the Sentencing Guidelines for possession of a dangerous weapon in connection with a drug offense. There were two .50 caliber black powder rifles and a loaded .44 caliber black powder revolver in Rauser's bedroom where he was found with the crack cocaine. Thus, Rauser's criminal history category was determined to be a II, and his offense level 28, yielding an advisory Guidelines range of 87-108 months, with a mandatory minimum of 120 months. He was sentenced to 162 months of imprisonment after the District Court granted the Government's motion for an upward departure pursuant to USSG § 4A1.3 on the ground that Rauser's criminal history category did not adequately reflect the seriousness of his criminal record.

Rauser objected to the two-level enhancement, and continues to do so, arguing that the weapons found hanging on the wall in his bedroom should not have been categorized as "firearms" or "dangerous weapons" because they were used only for hunting. The question of whether a dangerous weapon was possessed in connection with the offense is reviewed for clear error. United States v. Demes, 941 F.2d 220, 222-23 (3d Cir. 1991). Comment 3 to Section 2D1.1(b)(1) states that the two-level increase should be applied

10

"unless it is clearly improbable that the weapon was connected with the offense," which even Rauser's counsel admits is not supported by the evidence presented at trial. See Appellant's Brief at p. 32. The District Court did not err when it found that Rauser possessed the weapons to protect his drug business.

IV.

For these reasons, we will affirm.

11